**UNITED STATES of America, Appellee,**

v.

**KOUA THAO, Appellant.**

**No. 82–2391.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 20, 1983.

Decided July 21, 1983.

John P. Roehrick, Des Moines, Iowa, for Koua Thao.

Richard C. Turner, U.S. Atty., Ronald M. Kayser, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before ROSS, ARNOLD and JOHN R. GIBSON, Circuit Judges.

ARNOLD, Circuit Judge.

The defendant, Koua Thao, a Laotian of the Hmong tribe, was tried by a jury and convicted on three counts: knowing and intentional possession with intent to distribute 154.74 grams of opium, in violation of 21 U.S.C. § 841(a)(1) (1976) (Count I); knowing and intentional use of the United States mails in facilitating or causing the knowing and intentional possession with intent to distribute opium, in violation of 21 U.S.C. § 843(b) (1976) (Count II); and knowing and intentional importation of opium, in violation of 21 U.S.C. § 952(a) (1976) (Count III). The District Court [1] suspended the imposition of sentence and placed Thao on probation for two years on each count, to run concurrently. Thao appeals, arguing that, because the evidence was insufficient to support the convictions, the District Court erred in denying his motions for a

directed verdict of acquittal and for judgment of acquittal notwithstanding the verdict. We affirm the conviction on Count I but reverse the convictions on Counts II and III.

I.

On July 24, 1982, customs officials at the Los Angeles, California, mail station searched a package addressed from Mr. Wai Lee at the Soptuang refugee camp in Thailand to Mr. Thong Thao, 1824 6th Avenue, Des Moines, Iowa 50314.[2] (This is defendant's address, but not his name.) The package contained three purses and two facial-cream jars in which the officials discovered a substance later determined to be opium. They decided to allow the package to continue to its destination and forwarded it to the postal authorities in Des Moines. Letter carrier Mark Dingman was instructed to deliver the package and obtain identification from the person who claimed it.

On August 10 and 11, 1982, Dingman attempted to deliver the package but was told by members of the defendant's household that he was not home. On August 12, the defendant answered the door when Dingman knocked. Since the defendant does not understand English,[3] Dingman showed him the package and indicated with gestures that he needed to see identification. The defendant, who appeared anxious and happy, indicated that he was the addressee, produced a driver's license issued in his own name, Koua Thao, and signed a receipt slip as Koua Thao. According to the defendant, he took the package inside, placed it on the couch, and returned to the living room to cook.

About an hour later, federal and state law-enforcement officers arrived at the apartment with a search warrant. They searched the defendant and the other people present in the apartment, the defend-

---

1. The Hon. Harold D. Vietor, United States District Judge for the Southern District of Iowa.

2. A customs detector dog had "sniffed out" the package.

3. The transcript reflects only that the defendant does not read or write English or Hmong. Since an interpreter was used at trial, however, we assume that the defendant does not speak or understand English, either.

ant's father-in-law, his two young brothers, his children, and a neighbor. A lump of opium was found on the neighbor's person. The package had been opened, and the facial-cream jars and purses were found in various places in the apartment. One purse was found on a shelf in the closet of the bedroom which the defendant shared with his wife and two infant sons.[4] A slab of opium which had been removed from this purse was found in the defendant's shoe in the same closet.

## II.

■ Viewing the evidence, as we must, in the light most favorable to the verdict, e.g., *United States v. Jackson*, 696 F.2d 578, 582 (8th Cir.1982), we believe that the jury could reasonably find that the defendant possessed opium with the intent to distribute it. The element of possession may be satisfied by circumstantial evidence that the defendant knew of the contraband's presence and had control over it. *E.g., United States v. Hutchinson*, 488 F.2d 484, 488–89 (8th Cir.), *cert. denied*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). Here, there was evidence that the defendant identified himself to Dingman as the proper recipient of the package, appeared happy to receive it, and took it into his apartment. When the police arrived, the package had been opened, its contents removed, and some of the opium placed in the defendant's shoe in his bedroom closet. From these facts, the jury was entitled to infer that the defendant knowingly possessed the opium.

In addition, the jury could reasonably infer from the amount and value of the opium that the defendant intended to distribute it. See, *e.g., United States v. Blake*, 484 F.2d 50, 58 (8th Cir.1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 699 (1974). The opium weighed 154.74 grams, and, although the evidence of its value was somewhat vague and contradictory, it was worth at least $800. The defendant argues that the use of opium is common in the Hmong culture, and that heavy users may smoke up to two grams per day and use even more for medicinal purposes. Nonetheless, the question whether the defendant intended to use all the opium himself or whether he intended to distribute it was one for the jury, and we cannot say that its conclusion was unreasonable.

## III.

■ We hold, however, that the evidence was not sufficient to support the defendant's convictions on Counts II and III. The government points out that the defendant had lived for five years in the Soptuang refugee camp in Thailand before he came to the United States, that his sister-in-law still lived there, that the defendant had communicated with persons in the camp after he arrived in the United States,[5] that the address on the package was the defendant's, that the defendant was the only person named "Thao" living at that address, and that the defendant took the package and seemed happy to receive it. Although this evidence is certainly relevant, we do not believe that it is so probative that from it a reasonable jury could be convinced beyond a reasonable doubt that the defendant caused the package to be mailed to him. The fact that the opium was imported does not establish that the defendant imported it. *United States v. Seni*, 662 F.2d 277, 280 (4th Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 664 (1982); *United States v. Moler*, 460 F.2d 1273, 1274 (9th Cir.1972) (per curiam). There was no evidence linking the defendant to Mr. Wai Lee, the purported sender of the package; in fact, the government was unable to ascertain whether that individual even existed. Under these circumstances, we reverse the convictions on Counts II and III. The government proved that the defendant received the package, but not that he caused it to be mailed or imported.

Affirmed in part, reversed in part. The sentence imposed by the District Court on Count I remains intact.

---

**4.** Three other persons shared the other bedroom in the apartment.

**5.** Other persons wrote letters for the defendant.