UNITED STATES of America, Appellee,

v.

Ramon Jorge LaGUARDIA and Marina Hidalgo Gato, Appellants.

Nos. 84–5253, 84–5254.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1985.

Decided Oct. 7, 1985.

Philip G. Villaume, St. Paul, Minn., for appellants.

Joan Ericksen, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and PHILLIPS,[*] Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Ramon Jorge LaGuardia and Marina Hidalgo Gato appeal their conviction of possession of cocaine with the intent to distribute, and aiding and abetting in the possession of cocaine with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). LaGuardia appeals his convic-tion of use of a firearm to commit a felony, and aiding and abetting in this offense, in violation of 18 U.S.C. §§ 2 and 924(c)(1). Gato was acquitted of the firearms charges. The defendants argue that the evidence was insufficient to support the charges of which each was convicted. We affirm the judgments of conviction.

The evidence against Gato and LaGuardia was discovered during a search of their Minneapolis residence made under the authority of a valid search warrant. When the deputy sheriffs served the warrant, Laguardia tried unsuccessfully to slam the door shut. The deputies entered by force. When the deputies entered, Gato was standing in the living room. The deputies searched the apartment and found weapons, cocaine, and a large amount of cash.

A .22 caliber pistol fully loaded with six hollow point bullets and a large pocket knife were found inside a purse which was on the bed in the bedroom. The purse contained identification bearing Gato's name, an immigration card, makeup, keys, and a small amount of money. A loaded nine millimeter automatic pistol was found on a shelf in a hallway linen closet among numerous items of clothing. Ammunition for the two weapons was found in an upper shelf in the bedroom closet. A .44 caliber rifle was found inside the trunk of LaGuardia's car parked outside the apartment.

A zip-lock bag containing 17 ounces of cocaine, each ounce packaged separately, was found stuffed in the pant leg of a pair of men's blue jeans hanging in the bedroom closet. The cocaine was approximately 96 percent pure. Another ounce of cocaine was found inside a brown paper bag in a kitchen drawer next to the sink. This cocaine measured 99 percent pure. A small Deering gram scale coated with cocaine residue was discovered in the kitchen drawer alongside numerous household items and an envelope addressed to Gato. A hand held gram scale and weights were found in

---

[*] The HONORABLE HARRY PHILLIPS, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation. Judge Phillips participated in oral argument and at conference agreed with the vote of the court. However, due to his untimely death he did not have an opportunity to review the opinion.

the bedroom nightstand. A vial containing traces of cocaine was observed in the drop basket of the coffee maker. Two water pipes used to smoke cocaine were found on the shelf in the hallway between the kitchen and the bedroom.

Nine stacks of $100 bills totaling $9,800 were found among articles of clothing in the back of a bedroom dresser drawer. The cash was bundled in a single package. In the living room, $180 in cash was found stuffed underneath the dress of a doll resting on top of the stereo.

LaGuardia told the officers that he had found the cocaine. He also stated that Gato had nothing to do with it.

LaGuardia and Gato subsequently were indicted on charges of possession of cocaine with intent to distribute, use of a firearm in commission of the felony, and aiding and abetting each other in the commission of both offenses. Gato was acquitted of the firearms charges. Both were convicted of the remaining charges. These appeals followed.

## I.

Both Gato and LaGuardia challenge the sufficiency of the evidence upon which the jury convictions are founded. The standards that govern our review are well established. We evaluate the evidence in its entirety and review it in the light most favorable to the verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Lee,* 743 F.2d 1240, 1250 (8th Cir.1984). All conflicts in the evidence and all reasonable inferences must be resolved in favor of the jury's verdict. *United States v. Resnick,* 745 F.2d 1179, 1185 (8th Cir.1984). The evidence need not exclude every reasonable hypothesis other than guilt; it simply must be sufficient to convince a jury beyond a reasonable doubt that the defendant is guilty. *United States v. Cox,* 580 F.2d 317, 323 (8th Cir.1978); *United States v. Shahane,* 517 F.2d 1173, 1177 (8th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975).

■ Gato and LaGuardia both were convicted of aiding and abetting each other in the possession of cocaine with intent to distribute. The elements of the charge are that the defendant associated himself or herself with the unlawful venture, participated in it as something he or she wished to bring about, and sought by this action to make it succeed. *United States v. Sopczak,* 742 F.2d 1119, 1122 (8th Cir. 1984); *United States v. Brim,* 630 F.2d 1307, 1311 (8th Cir.1980), *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981).

■ The evidence with respect to Gato established that she was the lessee of the apartment in which she lived with LaGuardia and that she was present at the time the search took place. Cocaine was found in the bedroom closet and in two locations in the kitchen among household goods and appliances. Drug paraphernalia used both for consumption and distribution of cocaine, including the scales, were found in the common areas of the bedroom and kitchen. A loaded firearm and a knife were found in Gato's purse, the contents of which indicated that it currently was being used by her. Almost $10,000 in cash was found in the bedroom dresser drawer hidden among the clothing. Additional money was found hidden inside a doll.

This evidence, viewed in a light most favorable to the government, supports the conviction of Gato. The jury reasonably could find that as the lessee and an occupant of the apartment, she had control of the premises and permitted areas of the home to be used in the concealment of the drugs. *See United States v. Lawson,* 682 F.2d 1012, 1017 (D.C.Cir.1982). The presence of equipment to weigh and measure cocaine may be viewed as evidence of intent to distribute. *United States v. Pugh,* 566 F.2d 626, 628 (8th Cir.1977). Similarly, the substantial quantity of cocaine seized in the residence of which Gato had at least joint control was a factor to be considered by the jury on the question of intent to distribute. *United States v. Koua Thao,* 712 F.2d 369, 371 (8th Cir.1983); *United States v. Briscoe,* 574 F.2d 406, 409 (8th Cir.1978); *Bass v. United States,* 326 F.2d 884, 886–87 (8th Cir.), *cert. denied,* 377

U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964). The large sum of unexplained cash in connection with other evidence of drug trading is probative of the previous occurrence of drug transactions. *United States v. Tramunti*, 513 F.2d 1087, 1105 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). Finally, the firearm and knife concealed in Gato's purse, as well as the presence in the apartment of other weapons, generally considered tools of the narcotics dealer's trade, also is evidence of an intent to distribute. *United States v. Milham*, 590 F.2d 717, 721 (8th Cir.1979).

Gato argues that no evidence was presented that she actually had been seen selling cocaine or using the weapons. The evidence, she asserts, shows no more than a mere proximity to the drugs and a mere association to LaGuardia. She relies on *United States v. Ward*, 703 F.2d 1058, 1062 (8th Cir.1983), to argue that the evidence is insufficient to prove beyond a reasonable doubt that she aided and abetted LaGuardia in the possession of cocaine with intent to distribute.

In *Ward*, Lee Ward and Cheryl Rose, who lived together, appealed their convictions arising out of an attempt to grow marijuana on the property of a third party. The court concluded that the evidence against Rose, which included her fingerprints on several of the cups in which the marijuana was being grown, was insufficient to support her conviction. In our case, however, the evidence against Gato is far more substantial. First, the cocaine, weapons, and cash were present in common areas of a residence leased and occupied by Gato. Second, a firearm and knife were discovered in Gato's purse. Gato's connection to the crime charged, therefore, is considerably closer than was Rose's.

Taking the evidence as a whole, we conclude after a careful review of the record that the jury verdict against Gato is supported by sufficient evidence. The district court did not err in denying Gato's motion for acquittal.[1]

■ LaGuardia argues that the government failed to prove intent to distribute. He points out that there was no diluting agent in the house as is usually found in connection with cocaine distribution. He accounts for the presence of such large quantities by explaining that he is simply a very heavy user of cocaine.

These arguments are totally unpersuasive. We repeatedly have held that intent to distribute may be inferred solely from the possession of a large quantity of drugs. *United States v. Koua Thao*, 712 F.2d at 371; *United States v. Briscoe*, 574 F.2d at 509, *Bass v. United States*, 326 F.2d at 886–87. Eighteen ounces of cocaine is a most substantial quantity. In addition, the cocaine was virtually pure. Purity level is another factor properly considered with respect to intent to distribute. *See United States v. Franklin*, 728 F.2d 994, 998–99 (8th Cir.1984). Also, the presence of weighing scales, *United States v. Pugh*, 556 F.2d at 628, the $10,000 in cash, *United States v. Tramunti*, 513 F.2d at 1105, and three loaded firearms plus additional ammunition, *United States v. Milham*, 590 F.2d at 721, constitutes evidence which a jury properly may consider to infer an intent to distribute. *See also United States v. Marszalkowski*, 669 F.2d 655, 662 (11th Cir.1982).

## II.

■ LaGuardia further argues that the evidence is insufficient to establish his use

---

1. We do not view as problematic the arguable inconsistency of conviction on the charge of possession of cocaine with intent to distribute, supported by possession of a firearm, and acquittal on the charge of use of a firearm to facilitate possession of cocaine with intent to distribute. As Mr. Justice Holmes has stated:

> Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it were a separate indictment * * *. That the verdict may have been the result of compro-

mise, or of mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.

*Dunn v. United States*, 284 U.S. 390, 393–94, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932) (footnotes omitted). *Accord United States v. Powell*, —— U.S. ——, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *United States v. Smallwood*, 443 F.2d 535, 543 (8th Cir.), *cert. denied*, 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93 (1971).

of a firearm to commit a felony in a violation of 18 U.S.C. § 924(c)(1).[2] He argues that the testimony went only to the number and locations of the guns. There was no evidence of a drug sale or transaction, he contends. Nor was there any evidence that the weapons were used in such transactions.

Section 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of a felony. In *United States v. Grant*, 545 F.2d 1309 (2d Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977), a search of premises which defendant identified as his office and residence uncovered both cocaine and weapons. The court affirmed the conviction under section 924(c)(1), stating: "We hold that the evidence established that [defendant] used the guns as part of a tight security operation to protect large quantities of cocaine and hence to commit the felony of possessing cocaine with intent to distribute." *Id.* at 1312. In *United States v. Moore*, 580 F.2d 360 (9th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978), the defendant, while proceeding toward a bank he had planned to rob, was arrested for attempted bank robbery. A loaded pistol was concealed in the waistband of his trousers. The court upheld the conviction under section 924(c)(1), reasoning that possession of the gun was central to the accomplishment of the contemplated crime. The defendant "used" his gun, the court observed, much the way he used his gloves and ski mask. "These items increased the likelihood of success; without them he probably would not have sallied forth." *Id.* at 362. *Cf. United States v. Chase*, 692 F.2d 69 (8th Cir.1982) (narcotics agents, pursuant to a lawful search, discovered in defendant's residence over 38 ounces of cocaine and a .38 caliber pistol; defendant was convicted of illegal use of a firearm under section 924(c)(2)).

We have recognized the utility of firearms in advancing criminal adventures in narcotics. *United States v. Milham*, 590 F.2d at 721. *Accord United States v. Wiener*, 534 F.2d 15, 18 (2d Cir.1976). Weapons can be used for protection or intimidation and therefore facilitation of illegal transactions. *United States v. Mason*, 658 F.2d 1263, 1271 (9th Cir.1981). Here, there was found in the apartment $10,000 in cash and 18 ounces of almost pure cocaine. The weapons had undoubted utility in the protection of the valuable supply and of the cash on hand. The presence and availability in light of the evident need demonstrates the use of the firearm to commit the felony. The evidence of the weapons, found in connection with the cocaine and cash, was sufficient to support the submission of the firearms charge to the jury.

We therefore reject appellants' contentions and affirm the judgment of conviction.

---

**2.** 18 U.S.C. § 924(c)(1) provides:
Whoever—
   (1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States ...

\*   \*   \*   \*   \*   \*

shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.