UNITED STATES of America, Appellee,

v.

Noel S. BRETT, a/k/a Michael Wilson, Appellant.

UNITED STATES of America, Appellee,

v.

Hilroy Anthony GREY, a/k/a: Holroy Anthony Gray, James R. Monroe, Appellant.

Nos. 88–1899, 88–1900.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1988.

Decided April 24, 1989.

---

David F. Oliver, Kansas City, Mo., for appellant Noel S. Brett.

Joseph M. Chiarelli, Kansas City, Mo., for appellant Hilroy Anthony Grey.

Linda L. Sybrant, Asst. U.S. Atty., Kansas City, Mo., for appellee.

* The HONORABLE STEPHEN M. REASONER, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. Williams pled guilty to Count I in a plea bargain with the government in exchange for

Before LAY, Chief Judge, FAGG, Circuit Judge, and REASONER,* District Judge.

LAY, Chief Judge.

Hilroy Anthony Gray, Noel S. Brett and Carl A. Williams [1] were arrested at a crack cocaine house in Kansas City, Missouri, on November 4, 1987. They were each indicted on three counts: conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count I); possession, with intent to distribute, of five grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count II); and use of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count III). After jury trial Gray and Brett were convicted of all three counts; they were sentenced to 171 months and 157 months, respectively, under the Federal Sentencing Guidelines (Guidelines). 18 U.S.C. § 3551, *et seq.* Both defendants appeal and attack the sufficiency of the government's evidence. In addition, Gray alleges the district court [2] erred in refusing to grant his motion in limine and in the application of the Guidelines. We affirm the conviction and sentence of both defendants Brett and Gray.

In November, 1987, the Kansas City, Missouri, Police Department was investigating suspected drug house activities. On November 2, 1987, Detective Rosilyn Morrison, while working in an undercover capacity, went to a house at 4039 Park Avenue and purchased crack cocaine from two unknown black males. On the basis of this purchase Detective Morrison obtained a search warrant for 4039 Park Avenue on November 4, 1987. The search warrant was executed at approximately 6:00 p.m. that same day.

As point man of the Tactical Response Unit which was to conduct the search, Officer Inman was first to reach the back door of the house. As he got to the back door

his cooperation; he did not, however, testify at trial and is not a party to the instant appeal.

2. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

he saw a black male run out and head north. Inman then entered the house and arrested two other black males, Carl Williams and Noel Brett. After securing Williams and Brett, Inman went outside to look for the individual who had fled. Two houses north of 4039 Park Avenue, Hilroy Gray was found hiding under a porch. Also found under the porch next to Gray was $300 in currency. Inman then arrested Gray.

A search of 4039 Park Avenue revealed the existence of a fortified drug house. While the utilities were on, the house did not appear to be lived in. It had no refrigerator, no stove, no food, no telephone, and there was no clothing present. The windows were covered and the doors were reinforced. The back door was reinforced with plywood and had two locks on it as well as a chain lock at the top. The front door had metal brackets on either side of the frame which were fitted with a two-by-four board across the door.

When the search of the house was completed, Williams, Brett and Gray were personally searched. Williams had in his possession a 9 millimeter pistol with thirteen rounds of ammunition in the magazine and one round in the chamber. Also recovered from Williams was $1,465 in cash and a large plastic bag, later determined to contain 82 small ziplock bags of crack cocaine totalling 46.66 grams in weight. Seized from Brett was $1,300 in currency. Finally, in addition to the $300 found under the porch, $3,746 in additional currency was seized from Gray along with a key. When asked whether the key fit the front door to the house at 4039 Park Avenue, Gray denied that it did. The detectives at the scene tested the key, however, and determined that it did in fact fit the lock on the front door.

Detective Samuel Burroughs formally placed all three defendants under arrest and gave each his *Miranda* warnings. Brett thereafter admitted to Burroughs that 4039 Park Avenue was a drug house and that his job was to hold the gun and act as a lookout. Brett told Detective Dave Starbuck that he sold cocaine at this house

and had used the pistol, seized earlier from Williams, in providing security during drug transactions. Brett also told Starbuck that Williams had arrived with the bag of crack cocaine about one hour before the police appeared with the search warrant and that he, Brett, had sold some of the cocaine before the police arrived. Finally, Brett advised officers that Williams had also delivered cocaine on the previous day, November 3.

Detective Burroughs advised Gray of his rights on two different occasions. In response to questioning Gray stated that his name was James Monroe, that he did not work at the drug house, that he was unemployed, that the total of $4,046 seized from him was not drug money, and that the key found in his pocket did not fit the front door of the drug house. It was not until November 30, 1987, that Hilroy Anthony Gray admitted his true identity to authorities.

## I. Sufficiency of the evidence

Both Brett and Gray challenge the sufficiency of the government's evidence and argue it was error for the district court to deny their motions for acquittal.

### A. Brett

■ The evidence presented as to Brett's involvement was unequivocal and certainly more than sufficient to sustain his conviction. By his own admission Brett confessed to being both the "lookout" and the "hired gun" who provided security for the drug transactions at a proven crack cocaine house. Brett also admitted to personally selling cocaine. Furthermore, he admitted having knowledge that Williams was similarly engaged in the possession and sale of cocaine. This being the sole issue raised in his appeal, defendant Brett's conviction and sentence are affirmed.

### B. Gray

It is undisputed that the extent of the government's evidence implicating Gray consisted only of the following: (1) he fled from the scene at the time officers initially approached the house; (2) he falsely identi-

fied himself at the time of arrest; (3) he had $3,746 in his possession at the time of his arrest and claimed ownership to an additional $300 recovered from the location where he was apprehended; (4) he stated that he was unemployed, but would not explain how he obtained the money which he claimed was his; and (5) he possessed a key to the front door of 4039 Park at the time of arrest and denied that the key fit the front door lock.

Gray's argument concerning Count I, the conspiracy charge, is that the government presented no direct evidence that he participated in or knew of any conspiratorial agreement. This argument, however, overlooks the rule that circumstantial evidence alone can prove the existence of such an agreement. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Townsley,* 843 F.2d 1070, 1087 (8th Cir.1988); *United States v. Burchinal,* 657 F.2d 985, 992 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981).

■ We find the government produced a sufficient amount of circumstantial evidence concerning Gray's involvement in the conspiracy. The significant link showing Gray's participation in the conspiracy was his possession of a key to the front door of 4039 Park. This house was a fortified, operational crack house where over 46 grams of cocaine, large amounts of cash, a gun and ammunition were concealed. Gray stresses that each of the above-mentioned pieces of circumstantial evidence standing alone is insufficient to sustain a conspiracy conviction. While it may be that, standing alone, each piece of this evidence would perhaps be insufficient to convict, its cumulative effect cannot be ignored. The jury was aware of all of the facts and it reasonably concluded that Gray was a knowing participant in the conspiracy. The conspiracy conviction in Count I is affirmed.

■ As to Count II, Gray contends the government did not prove the requisite elements of possession and intent to distribute cocaine. We disagree. Possession of contraband may be actual or constructive. *United States v. Jones,* 676 F.2d 327, 332 (8th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982). Proof of constructive possession is sufficient to satisfy the element of knowing possession under § 841(a)(1). *United States v. Matra,* 841 F.2d 837, 840 (8th Cir.1988); *United States v. Shurn,* 849 F.2d 1090, 1093 (8th Cir.1988). A person has constructive possession of contraband if he has "ownership, dominion or control over the contraband itself, *or dominion over the premises in which the contraband is concealed."* *Matra,* 841 F.2d at 840 (emphasis added). *See also Shurn,* 849 F.2d at 1093. Finally, constructive possession may be joint among several defendants; it need not be exclusive. *United States v. O'Connell,* 841 F.2d 1408, 1425 (8th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989); *United States v. Caspers,* 736 F.2d 1246, 1249 (8th Cir.1984).

■ Once again the evidence presented was that Gray had the key to the front door of 4039 Park in his pocket. Gray concedes in his reply brief to this court that possession of the key may have permitted him to exercise control over 4039 Park. However, he argues this fact is insignificant in light of the fact that defendants Brett and Williams exercised the same control, as evidenced by their admitted presence at 4039 Park on November 4, 1987, and prior occasions. This argument is unpersuasive and similar arguments have been rejected by this court repeatedly. As this circuit held in *O'Connell,* 841 F.2d at 1425, and *Caspers,* 736 F.2d at 1249, constructive possession may be joint among several defendants; it need not be exclusive. Thus, we hold that proof of possession of the key to the front door of the house is sufficient evidence to prove the "knowing possession" element of Count II. *Jones,* 676 F.2d at 332.[3]

---

**3.** We note that every other circuit to address this issue agrees that the holder of the key, be it to the dwelling, vehicle or motel room in question, has constructive possession of the contents therein. *See, e.g., United States v. Zabalaga,* 834 F.2d 1062 (D.C.Cir.1987) (keys to locked car where drugs found); *United States v. Perlaza,* 818 F.2d 1354 (7th Cir.), *cert. denied,* — U.S.

■ The second element of this charge requires sufficient proof of intent to distribute cocaine. Intent to distribute may be proved by either direct or circumstantial evidence. *Matra,* 841 F.2d at 841. It also may be inferred solely from the possession of a large quantity of drugs. *United States v. LaGuardia,* 774 F.2d 317, 320 (8th Cir.1985); *United States v. Koua Thao,* 712 F.2d 369, 371 (8th Cir.1983); *United States v. Briscoe,* 574 F.2d 406, 409 (8th Cir.), *cert. denied,* 439 U.S. 858, 99 S.Ct. 173, 58 L.Ed.2d 165 (1978); *Bass v. United States,* 326 F.2d 884, 886–87 (8th Cir.), *cert. denied,* 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964). Purity level is another factor properly considered with respect to intent to distribute. *LaGuardia,* 774 F.2d at 320; *United States v. Franklin,* 728 F.2d 994, 998–99 (8th Cir.1984). Likewise, the presence of a large sum of unexplained cash in connection with other evidence of drug trading is probative of the previous occurrence of drug transactions. *LaGuardia,* 774 F.2d at 320; *United States v. Tramunti,* 513 F.2d 1087, 1105 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). Finally, the presence of a firearm, generally considered a tool of the narcotics dealer's trade, also is evidence of an intent to distribute. *LaGuardia,* 774 F.2d at 320; *United States v. Milham,* 590 F.2d 717, 721 (8th Cir.1979). Applying these factors to the present case the evidence shows: (1) 46.66 grams of crack cocaine, an amount certainly qualifying as large or substantial; (2) a purity level of 89% in the crack cocaine; (3) over $6,800 in unexplained cash, $4,046 of which Gray admitted was his; and (4) a fully loaded 9 millimeter pistol. We hold this constitutes sufficient evidence for the jury to infer an intent to distribute. Having found the government's evidence sufficient on both elements of Count II, Gray's conviction on that charge is affirmed.

■ Gray also attacks the sufficiency of the evidence on Count III, use of a firearm in connection with drug trafficking. In essence Gray argues there was no evidence that he in fact "used" the pistol, seized from underneath defendant Williams' body, as that term of 18 U.S.C. § 924(c) has been interpreted or that he had any knowledge of its existence.

The "use" language of § 924(c) has been interpreted by this court to mean "[t]he presence and availability [of the firearm] in light of the evident need." *LaGuardia,* 774 F.2d at 321. *See also Matra,* 841 F.2d at 842. In *LaGuardia* the court recognized the utility of firearms to those who traffic in illegal drugs and held that evidence of weapons, found in connection with cocaine and cash, was sufficient to support the submission of a § 924(c) firearms charge to the jury. 774 F.2d at 321. Similarly, in *Matra* the court followed the holding of *LaGuardia,* noting:

> The facts of this case are similar to those of *LaGuardia.* Here, police found weapons and ammunition, a large quantity of cocaine and cash, and drug paraphernalia. As in *LaGuardia,* none of these items was in the actual possession of the defendant, but all were under his control. The machine gun was present and was available to Matra as he had possession of a key to the room in which the gun was concealed. This weapon "had undoubted utility in the protection of the valuable [cocaine] supply and of the cash on hand." *LaGuardia,* 774 F.2d at 321.

> \* \* \* \* \* \*

> Although Matra \* \* \* did not have a firearm on his person, he did have ready access to the machine gun. \* \* \* Matra did not brandish or discharge his weapon, but it was an integral part of his criminal undertaking and its availability increased

——, 108 S.Ct. 176, 98 L.Ed.2d 130 (1987) (key to motel room where drugs seized); *United States v. Gaviria,* 740 F.2d 174 (2d Cir.1984) (keys to apartment and box where cocaine found); *United States v. Damsky,* 740 F.2d 134 (2d Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984) (key to camper where hashish located); *United States v. Marto-* *rano,* 709 F.2d 863 (3d Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983) (keys to van and to padlock on van where contraband found); *United States v. Martinez,* 588 F.2d 495 (5th Cir.1979) (key to trunk of car sufficient even when defendant was not owner of car nor was he in the car at the time the drugs were found).

the likelihood that the criminal undertaking would succeed. In these circumstances, it would defy both logic and common sense to conclude that Matra did not "use" the machine gun within the meaning of § 924(c).

841 F.2d at 842, 843. We find *LaGuardia* and *Matra* indistinguishable from the present fact situation. These cases are therefore controlling on Gray's "use" argument under § 924(c). Additionally, in light of the surrounding circumstances, we find Gray's argument of lack of knowledge of the existence of the gun meritless. The conviction on Count III is affirmed.[4]

## II. Sentencing

Gray argues on appeal that the district court erred in two respects in the application of the Federal Sentencing Guidelines (Guidelines). He contends the district court erred in assigning a base offense level of 30 because there was insufficient evidence concerning the quantity of drugs involved. He also alleges error in the two-level enhancement of his base offense level for impeding the administration of justice. We reject both of these arguments.

Our standard of review under the Guidelines is mandated by statute. 18 U.S.C. § 3742(a)–(e) (1986). When, as here, *application* of the Guidelines is at issue, we are to accept the findings of fact of the district court unless they are clearly erroneous, 18 U.S.C. § 3742(d), and must affirm the sentence if it is determined that those facts were correctly applied to the Guidelines. 18 U.S.C. § 3742(e)(3).

The length of sentence for the conspiracy and possession with intent to distribute portions of Gray's conviction is computed by way of a "sentencing table" found in Guideline, § 5A. This table sets out the applicable Guideline range based upon a base offense level, determined by the district court, and the defendant's corresponding criminal history category, as determined by the probation office in the pre-sentence report. For crimes involving drugs, the base offense level is directly proportionate to the type and quantity of drugs involved. Guideline § 2D1.1. In the present case, 46.66 grams of cocaine base (crack cocaine) carries a base level of 30. *See* Drug Quantity Table, Guideline § 2D1.1. The Guidelines then allow for this base offense level to be adjusted upward or downward if the district court finds a factual basis exists to do so. In the present case the district court adjusted Gray's base offense level upward for obstructing the administration of justice. Guideline § 3C1.1. A two-level enhancement is mandated for such a finding, *id.*, leaving Gray's base offense level at 32. Gray has a corresponding criminal history category of I, the lowest possible, which translates into a Guideline range for Counts I and II of his conviction of 121–151 months imprisonment. On Count III, use of the gun, the Guidelines specifically address convictions under 18 U.S.C. § 924(c) and mandate the imposition of the statutory penalty to run consecutive to any other term of imprisonment. Guideline § 2K2.4. This translates to an additional 60 months in Gray's case. *See* 18 U.S.C. § 924(c). Therefore, with adjustments, the

4. Gray also asserts error in the district court's denial of his motion in limine. That motion sought to exclude the testimony of Detective Morrison concerning the undercover purchase of crack cocaine on November 2, 1987. Gray argued to the district court, and reiterates on appeal, that the government concedes it is unable in any way to tie him personally to that particular sale because Detective Morrison described the sellers only as "two unidentified black males" and admitted that neither Gray nor Brett was one of those men. Therefore, he stresses, this "extrinsic crimes" evidence was irrelevant and highly prejudicial. The indictment charged that "[b]eginning on or about November 2, 1987, and continuing until on or about November 4, 1987, * * * [Brett, Gray and Williams] conspired and agreed with each other and with others known and unknown to the grand jury to distribute a controlled substance." The government therefore argues, and the district court held, that the testimony concerning the November 2 undercover sale was offered as evidence to show an ongoing operational crack house at 4039 Park. Since the possession of the key to the premises, as conceded by Gray's counsel, shows joint control of that house, we find this evidence "clearly had bearing on issues presented to the jury." *United States v. Galyen*, 798 F.2d 331, 332 (8th Cir.1986). Hence, we cannot say that the district court abused its discretion in admitting this evidence.

range of sentence available for the district court was 181–211 months. Gray's actual sentence, 171 months, was below this amount.[5]

■ Gray argues that the district court erred in its factual finding on the quantity of drugs involved. He conceded at the sentencing hearing that 46.66 grams of material were seized. Gray takes issue, however, with the finding that all of this material was crack cocaine and argues that the evidence is insufficient to support such a finding. We disagree. The government's expert witness, the laboratory chemist, testified that she picked, at random, six of the 82 packets and performed chemical analysis on same. She further testified that upon visual inspection all of the packets contained the same "fairly hard and rocky substance." Further, as the district court noted, all of these 82 smaller bags were seized at the same time as part of one larger bag. They were packaged identically and each contained approximately .5 grams of material.

In essence Gray argues that the government only chemically analyzed and proved enough of the drugs to exceed the specific statutory amount needed for a conviction and did not prove, for sentencing purposes, that all 46.66 grams of this substance were cocaine base.

The Fifth Circuit recently addressed similar challenges to factual findings concerning the quantity of drugs in sentencing under the Guidelines. In *United States v. Taylor*, 868 F.2d 125 (5th Cir.1989), the defendant was convicted of conspiracy to distribute over 17 grams of LSD. Taylor argued that the weight of the controlled substance should be distinguished from the weight of the medium on which it was distributed for sentencing purposes. The court rejected this argument citing a foot-

note to the Drug Quantity Table accompanying Guideline § 2D1.1 which states:

> The scale amounts for all controlled substances refer to the total weight of the controlled substance. Consistent with the provisions of the Anti–Drug Abuse Act, if any mixture of a compound contains any detectable amount of a controlled substance, *the entire amount of the mixture or compound shall be considered in measuring the quantity.* If a mixture of compound contains a detectable amount of more than one controlled substance, the most serious controlled substance shall determine the categorization of the entire quantity.

*Taylor*, 868 F.2d at 127 (emphasis added). Likewise, in *United States v. Rojas*, 868 F.2d 1409 (5th Cir.1989), the defendant challenged the sentencing court's factual finding that 497 grams of cocaine were involved. Rojas argued that the district court should have found that the crime involved only 338 grams because the cocaine was only 68% pure. The Fifth Circuit rejected this argument as well, again citing to § 2D1.1 of the Guidelines. *Rojas*, 868 F.2d at 1409–10. We find this reasoning persuasive. On the present record we cannot say that the district court was clearly erroneous in finding the quantity of drugs involved to be 46.66 grams, resulting in a base offense level of 30.

■ Gray's next contention is that the district court erred in enhancing his base offense level by two levels under Guideline § 3C1.1 [6] for willfully obstructing or impeding judicial proceedings by giving authorities a false name at the time of his arrest. Although Gray concedes he did not notify the government of his true identity until November 30, 1987, he argues that his initial false identification did not have a material affect on the government's investigative efforts. The district court disagreed and found that the government had lost

---

**5.** The district court exercised its discretion to reduce Gray's sentence to 111 months on Counts I and II, which is 10 months below the minimum end of the range. The government has not appealed this deviation.

**6.** Guideline § 3C1.1 reads as follows:

*Willfully Obstructing or Impeding Proceedings*

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level from Chapter Two by 2 levels.

time, manpower and money because it was laboring under the misbelief that Gray was James Monroe. Upon review of the record we cannot say this finding was in error.

Accordingly, because the district court correctly applied the Guidelines to its factual findings, and because those findings were not clearly erroneous, we affirm the sentence imposed on defendant Gray.

The conviction and sentence are affirmed.