**UNITED STATES of America, Appellee,**

v.

**Martha ALANIS, Appellant.**

**No. 89–2664.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1991.

Decided Sept. 24, 1991.

---

Timothy J. Doyle, Lincoln, Neb., for appellant.

Alan L. Everett, Lincoln, Neb., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON and ROSS, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Martha Alanis appeals from her conviction on two counts of mail fraud under 18 U.S.C.A. § 1341 (West Supp.1991) and one count of wire fraud under 18 U.S.C.A. § 1343 (West Supp.1991), based on her submitting a false insurance claim and causing the proceeds check to be mailed to her. On appeal, Alanis argues that: (1) the evidence was insufficient to support conviction; (2) two of the counts are redundant of each other; (3) one count failed to allege a criminal act; (4) the district court should have declared a mistrial because of improper argument by government counsel; (5) the court should have discharged the jury upon discovery that the government failed to supply exculpatory evidence to the defense; and (6) the district court should have granted Alanis' request for a transfer to the Southern District of Texas. We affirm the judgment of the district court.[1]

In August 1984, Alanis and Jose Humberto Leal met with insurance agent Jose Melendez in McAllen, Texas. Melendez represented the Security Mutual Life Insurance Company of Lincoln, Nebraska. Alanis and Leal, representing themselves to be husband and wife, applied for a life insurance policy with Security Mutual insuring Leal. The policy provided for a $30,000.00 payment to Alanis upon Leal's death, with a double payment in the event of an accidental death.

In mid-September 1988, Hurricane Gilbert struck Mexico, killing many people. On October 3, Marina Melendez, who worked in her husband's insurance office, received a phone call from a woman she believed to be Alanis' sister who stated that Leal had died in the hurricane. Mrs. Melendez reported this news by telephone to Jose, who happened to be at Security Mutual's home office in Lincoln, Nebraska, on that day. Alanis later submitted a written claim for payment, which was received in Security Mutual's home office on October 17, 1988. In support of her claim, Alanis also sent a document that appeared

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

to be a Mexican death certificate attesting to Leal's death. On October 20, Security Mutual's Nebraska headquarters sent Alanis a check for $60,332.40 to settle her claim.

In November 1988, insurance investigator Joe Medina contacted Alanis. Medina had been hired by two other companies— Kentucky Central Life Insurance Company and Southern Life Insurance Company— that had issued life insurance policies on Leal during the summer of 1988. Medina took a written statement from Alanis in which she stated that she had identified Leal's remains through official photographs and his personal effects, but that she had not been able to recover Leal's body because it had been part of a mass burial. She also stated to Medina that she did not know the name of the lawyer who helped her obtain the death certificate. Alanis provided Medina with a Mexican "Inspection of cadaver certificate" in further support of her claim that Leal was dead.

In January 1989, Alanis was charged with three counts of mail fraud and four counts of wire fraud under 18 U.S.C. §§ 1341 and 1343 in connection with the insurance policy application to Security Mutual, her submission of a claim under the policy, and the mailing of the proceeds to her.

The government's evidence at trial showed, and Alanis admitted, that the insurance application contained false representations, including the use of Alanis' driver's license number and social security number as Leal's.[2] The application stated that Leal was a legal resident of the United States, although he was in fact an illegal alien. The application also stated that no other life insurance policies had been issued on Leal's life, although two other companies had issued policies. Alanis and Leal represented themselves as husband and wife although they had not been formally married; Alanis stated at trial that they had a common-law marriage.

Alanis testified at length in her own defense, stating that she went to Monterey, Mexico on September 21 and 28 searching for her husband's remains. On her first trip, she testified that she did not speak to any authorities and found no evidence of her husband's demise. On her second trip, she testified that she spoke with officials and found a ring that she identified as Leal's among the personal belongings of hurricane victims. Contrary to her statement to Medina, she testified that she had been unable to identify her husband's body in the photographs because the bodies "were beyond the point of recognition." Although she acknowledged that Mexican officials had not accepted her identification of the ring as Leal's, she testified that she was later able to procure a death certificate through the efforts of a Mexican lawyer.

Jorge Silva and Hector Zarate, two Mexican officials who supervised the identification of Hurricane Gilbert victims in the region of Mexico where Leal purportedly perished, testified on behalf of the government. According to Zarate's testimony, the death certificate furnished to Security Mutual by Alanis had numerous irregularities. No bodies were classified as identified until the person making the identification had spoken personally to Silva or Zarate. They stated that no body was identified as that of Jose Humberto Leal, and that it would not have been possible for anyone to obtain a valid death certificate in the manner that Alanis described.

Silva also testified that he spoke to Alanis, but not until the last half of October when she came to Mexico still looking for a body to identify. At that point, Alanis had already submitted her written claim and alleged death certificate to Security Mutual. In her testimony, Alanis denied making a trip to Mexico in October.

The jury acquitted Alanis on one count of mail fraud and three counts of wire fraud, but found her guilty of two counts of mail fraud and one count of wire fraud in viola-

---

2. During his testimony, Melendez admitted that he knew the driver's license and social security numbers were Alanis' at the time he helped Alanis and Leal fill out the application.

tion of 18 U.S.C. §§ 1341 and 1343, respectively.[3] This appeal followed.

## I.

Alanis argues that the evidence is insufficient to support a finding of guilt under 18 U.S.C. §§ 1341 or 1343.[4] Both of these statutes require that the defendant have "devised or intend[ed] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises...." 18 U.S.C. §§ 1341, 1343.

Alanis contends that there is insufficient evidence to support a finding that she devised a criminal scheme, in light of the facts that many of the victims of Hurricane Gilbert were never identified, that rapid decomposition made identification of the bodies difficult, that the government produced no evidence that Leal was alive following his trip to Mexico, and that the "irregular" nature of the documents submitted by Alanis to establish Leal's death could not be considered surprising in the wake of such a catastrophe.

In a challenge to the sufficiency of the evidence, we review the evidence in its entirety and in the light most favorable to the verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Lee*, 743 F.2d 1240, 1250 (8th Cir.1984); *United States v. LaGuardia*, 774 F.2d 317, 319 (8th Cir. 1985). Moreover, "[a]ll conflicts in the evidence and all reasonable inferences must be resolved in favor of the jury's verdict."

*LaGuardia*, 774 F.2d at 319 (citation omitted). We uphold the conviction if it is sufficient to convince a jury beyond a reasonable doubt that the defendant is guilty. *Id.*

■ The government alleged that Alanis devised a scheme to defraud Security Mutual, and that as part of this scheme, she submitted a fraudulent application for insurance and a fraudulent claim for payment. Although some of the evidence is directly relevant to the false application counts on which the jury acquitted Alanis, we may consider that evidence in determining the sufficiency of the evidence as to the counts on which she was convicted. *United States v. Liebo*, 923 F.2d 1308, 1311 (8th Cir.1991). *See United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984).

■ Alanis admitted at trial that the insurance application misrepresented Leal's social security and driver's license numbers and erroneously stated that he was a legal resident and that no other insurance policies had been issued on his life.

Much of the trial testimony focused on Alanis' efforts to gather evidence that Leal had perished and to collect the insurance proceeds. Medina, the insurance investigator, testified that Alanis told him that she had identified Leal's body from a photograph, but that she had been unable to recover his remains because he was buried in a common grave with other victims.

---

**3.** The jury found Alanis guilty of submitting a false and fraudulent claim for payment (Count II), of causing the proceeds check to be sent to her (Count III), and of causing a telephone call to be made to Security Mutual's Nebraska office reporting Leal's death (Count VII).

**4.** 18 U.S.C. § 1341 states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes

to be delivered by mail according to the direction thereon ... shall be fined not more than $1,000 or imprisoned not more than five years, or both....

18 U.S.C. § 1343 states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both....

Zarate, who supervised the identification of unknown bodies in the State of Nuevo Leon, Mexico, in the aftermath of Hurricane Gilbert testified that approximately 170 bodies were brought to his two morgues following the hurricane and that all cadavers were inspected by registered forensic physicians with whom Zarate is personally acquainted. Zarate testified that the physician's name appearing on the purported death certificate, "Dr. Angel Saenz Lira," was not one of the forensic physicians in his department and that no physician by that name was registered as a forensic physician. He further testified that Leal's name did not appear on a list of identified hurricane victims and that none of the unidentified victims had been buried prior to the date on which the alleged death certificate was issued. The certificate stated that Leal had been buried at the municipal cemetery in the City of Guadalupe. Zarate also described additional irregularities in the document and stated that there was no record of Leal's death in the official registration book where it would have been filed.

Contradicting Alanis' statement to Medina that Leal's body could not be located because it was part of a mass burial, Zarate testified that unidentified bodies were individually placed in numbered coffins and that his office knows where each is buried. Finally, Zarate disputed the authenticity of the "Inspection of cadaver certificate," which stated that Leal's body was identified at the University Hospital Morgue. Zarate, who supervises the morgue, stated that no body at the morgue was identified as that of a Jose Humberto Leal.

Silva, the chief of the medical examiner's service in the city of Guadalupe and a subordinate of Zarate's, testified that the only bodies from which his staff recovered jewelry were those which were later identified and that the bodies buried without being identified did not have any rings. His testimony directly contradicted Alanis' testimony about receiving Leal's ring.

Although Zarate testified that he never met Alanis, Silva testified that he remembered a visit with Alanis, but that the visit did not take place until the end of October, almost a month after the hurricane and after Alanis had submitted her claim to Security Mutual. Silva testified that he gave her some photographs of unidentified victims to look at, and that Alanis did not identify Leal in the photos.

Looking at the evidence in the light most favorable to the verdict and resolving all conflicts in the evidence in favor of the verdict, we conclude that the evidence is more than sufficient to sustain the jury's finding of guilt under both 18 U.S.C. §§ 1341 and 1343. Reasonable jurors could find beyond a reasonable doubt that Alanis submitted false and fraudulent documents to support her insurance claim, that she had no evidence of Leal's death, and that her claim to the insurance company was a part of a scheme or artifice to defraud. We thus deny Alanis' claim that the evidence was not sufficient to convict her.

## II.

Alanis next argues that Counts II and III are redundant and that she may not be charged twice with the same act. She claims that they are redundant because Count II alleged that on October 17, 1988, she mailed a false claim for benefits, and Count III alleged that she fraudulently caused a check to be sent through the mail in settlement of her claim.

Before the district court, Alanis moved for a judgment of acquittal, relying in part on the alleged duplicity of the charges. The district court denied the motion.

In *United States v. Calvert,* 523 F.2d 895 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976), we stated that "each use of the mails is a separate offense under the mail fraud statute, notwithstanding the fact that the defendant may have been engaged in one fraudulent scheme." *Id.* at 914. *See also United States v. Moss,* 631 F.2d 105, 106–07 (8th Cir.1980).

Relying on this well-settled rule, we conclude that Counts II and III were not duplicitous and that the district court did not err in denying Alanis' motion for acquittal.

### III.

■ Alanis next contends that Count III failed to allege a criminal act because it concerned an action taken not by her, but by Security Mutual—namely the mailing of the settlement check.

■ Under 18 U.S.C. § 1341, it is not necessary to show that the defendant actually mailed something herself, but merely to show that "[she] caused it to be done." *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954).

The mailing of the check by Security Mutual was reasonably foreseeable by Alanis upon submission of her claim, *see id.* at 8–9, 74 S.Ct. at 362–63, and was, in fact, the ultimate goal of Alanis' efforts. Moreover, the mailing occurred in the ordinary course of business. *See id.* We therefore conclude that Count III properly alleged a criminal act.

### IV.

■ Alanis next alleges that the district court erred by failing to declare a mistrial because of an improper remark by the government during closing argument concerning the value of the two other insurance policies on Leal's life. Over Alanis' continuing objection, the district court admitted evidence of two other insurance policies, both of which named Alanis as the beneficiary. During cross examination, Alanis stated that she submitted reports of Leal's death to these two other companies merely to be excused from paying the premiums. The government then asked: "Are you saying you weren't trying to collect the $50,000 under each of those policies that would be paid in the event of Mr. Leal's accidental death?" Alanis replied: "I'm not God, I don't know if they're going to pay them to me or not."

The prosecutor's question mentioning the $50,000 death benefit was the only reference during the trial to the value of the policies. During closing argument, the prosecutor commented on the policies, stating that the application to Security Mutual was not isolated, and that "[Alanis] and Mr. Leal had obtained two other life insur-

ance companies, [sic] policies ... with pay outs of $50,000 a piece." The defense attorney objected and the court overruled the objection.

Alanis argues that because the dollar value of the policies had not been admitted into evidence, the prosecutor's argument was improper. She further contends that the error was so serious that the district court should have declared a mistrial.

■ When a proper objection has been made to remarks during closing argument we reverse only when "the improper remarks could reasonably have affected the jury's verdict." *United States v. O'Connell,* 841 F.2d 1408, 1429 (8th Cir.), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988). *See also Lee,* 743 F.2d at 1254.

Assuming that the prosecutor's remark on the value of the policies was in fact improper, we see no reason to conclude that it had any effect on the jury's verdict. The existence of the two policies was admitted by Alanis during cross examination. She also admitted she had applied for the other policies before signing the application to Security Mutual despite the fact that the Security Mutual application stated that no other policies were pending on Leal's life.

Given these facts, as well as the extensive evidence of Alanis' fraudulent activities in this case, we conclude that the reference to the $50,000 benefits could not reasonably have affected the jury's verdict and was therefore harmless.

### V.

■ Alanis finally argues that the government violated due process by failing to tender exculpatory evidence and that the district court abused its discretion by denying her request to transfer the case to the Southern District of Texas where she and critical witnesses reside and where "people have a much better grasp on the realities of life in Mexico than do people in Nebraska." We have fully examined these claims and conclude they are without merit.

For the foregoing reasons, we affirm the judgment of the district court.