ACCEPTED
08-17-00124-CR
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
5/25/2018 5:02 PM
DENISE PACHECO
CLERK

## NO. 08-17-00124-CR

### IN THE
### COURT OF APPEALS
### EIGHTH DISTRICT OF TEXAS

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS

5/25/2018 5:02:45 PM

DENISE PACHECO
Clerk

**EFRAIN JIMENEZ**                                                                 **APPELLANT**

**V.**

**THE STATE OF TEXAS**                                                     **APPELLEE**

### THE STATE'S BRIEF

### ON APPEAL FROM CAUSE NUMBER 20150D04711
### IN THE 384th JUDICIAL DISTRICT COURT
### OF EL PASO COUNTY, TEXAS

**JAIME ESPARZA**
**DISTRICT ATTORNEY**
**34th JUDICIAL DISTRICT**

**RAQUEL LOPEZ**
**ASST. DISTRICT ATTORNEY**
**DISTRICT ATTORNEY'S OFFICE**
**201 EL PASO COUNTY COURTHOUSE**
**500 E. SAN ANTONIO**
**EL PASO, TEXAS 79901**
**(915) 546-2059 ext. 4503**
**FAX (915) 533-5520**
**raqlopez@epcounty.com**
**SBN 24092721**

**ATTORNEYS FOR THE STATE**

**The State does not request oral argument.**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi-ix

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-6

SUMMARY OF THE STATE'S ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . 7-9

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-51

**THE STATE'S REPLY TO JIMENEZ' FIRST ISSUE**
**Because Jimenez failed to complain about the trial court's alleged failure to arraign him at any point during the proceedings, he has failed to preserve his complaint and presents this Court with nothing for review. In any event, because Jimenez, represented by counsel, entered his plea to the indictment at the trial on the merits, he waived his right to arraignment. And because the indictment was formally read to Jimenez at trial, Jimenez entered his plea thereto, and there was no issue of identity, the purpose of arraignment was fulfilled, such that any error was rendered harmless. Jimenez' first issue should thus be overruled.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-18

**I.      Underlying facts.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**II.     Because Jimenez never objected in the trial court to the alleged lack of arraignment, he has failed to preserve error and presents nothing for review.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

**III.    Even if this Court concludes that Jimenez somehow preserved his complaint, Jimenez' first issue should be overruled nonetheless because, absent affirmative evidence to the contrary, this Court must presume that Jimenez was arraigned.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

**IV.     Because Jimenez, represented by counsel, entered a plea to the indictment at his trial on the merits, he waived his right to arraignment.**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

**V.** Because there was no issue of identity, and because Jimenez entered his plea to the indictment at the trial on the merits, any error was harmless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18

**THE STATE'S REPLY TO JIMENEZ' SECOND ISSUE**

The trial court's signed, competency-determination order, which shows that the trial court undertook a formal determination of Jimenez' competency to stand trial, is entitled to a presumption of truthfulness and regularity. And because Jimenez, who merely complains of his alleged deprivation of a competency trial altogether and does not otherwise challenge the trial court's competency determination, has failed to produce affirmative evidence to rebut the presumption of regularity in the proceedings establishing that a bench trial on the issue of competency was, in fact, conducted, his claim necessarily fails and should be overruled.. . . . . . . . . . . . . . . . . . . . . . 19-25

**I.** Underlying facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

**II.** Texas' competency statutes and applicable law on competency. . . 20-22

**III.** Because the trial court's signed, written order shows that, upon a formal hearing on the matter of competency, neither Jimenez, the State, nor the trial court requested a jury trial on the issue of competency, Jimenez has failed to demonstrate that he was unduly denied either a competency trial by jury or a competency trial altogether.. . . . . . . 22-25

**THE STATE'S REPLY TO JIMENEZ' THIRD AND FOURTH ISSUES**

**Because Jimenez failed to object to the State's alleged impermissible pursuit of both a conviction and a deadly-weapon finding on the basis of his possession of the same deadly weapon, he has waived his right to complain on that basis on appeal, and his third issue should be overruled for this reason alone. But even if Jimenez preserved his complaint, because the evidence showed that, rather than merely possessing the shank, Jimenez affirmatively employed the shank for the specific purpose of inflicting, at the very least, serious bodily injury on at least one of the officers attempting to remove him from his cell, Jimenez' use of the shank actually facilitated both his commission of the underlying offense (possession of the shank) and his flight therefrom, thus meeting the "facilitation-nexus" rule under *Plummer* and making the entry of an affirmative deadly-weapon finding proper (Issue Three). And because: (1) the manner of Jimenez' use and intended use created a threat of present physical harm to the officers in the vicinity; and (2) the undisputed evidence showed that the shank was adapted for the purpose of inflicting serious bodily injury or death, the evidence in support of the affirmative-deadly weapon finding was legally sufficient (Issue Four). As such, the trial court's entry of a deadly-weapon finding was proper, and Jimenez' third and fourth issues should be overruled.**. . . . . . . . . . . . . . . . . 26-51

**I.      Underlying Facts**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

**II.     Because the evidence showed that, rather than merely possessing the shank, Jimenez affirmatively employed the shank for the specific purpose of inflicting, at the very least, serious bodily injury on at least one of the officers attempting to remove him from his cell, Jimenez' use of the shank actually facilitated both his commission of the underlying offense (possession of the shank) and his flight therefrom, thus meeting the "facilitation-nexus" rule under *Plummer*. As such, the trial court's entry of a deadly-weapon finding was proper (Issue Three).** . . . . . 28-41

        **A.     Because Jimenez never objected to the State's alleged improper attempt to pursue both a conviction and a deadly-weapon finding on the basis of the same deadly weapon, Jimenez failed to preserve his complaint and presents nothing for review.** . . . . 30-31

B.    The Court of Criminal Appeals has expressly held that *any* felony is theoretically susceptible to a deadly-weapon finding, even if the use of the weapon itself also serves to fulfill one of the elements of the offense.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-33

C.    *Narron*, *Ex parte Petty*, *Patterson*, and *Plummer*—the "facilitation-nexus" rule.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-37

D.    Jimenez' use of the shank actually facilitated both his commission of the predicate offense (possession of the shank) and his flight therefrom, thus meeting the facilitation-nexus rule.. . . . . . . . 37-41

III.    Because the evidence showed that Jimenez effectuated a threat of present harm to the officers situated in close physical proximity to his cell, and because the evidence established that the shank had been adapted for the purpose of inflicting death or serious bodily injury, the evidence was legally sufficient to support the deadly-weapon finding (Issue Four). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41-51

A.    Generally applicable law and standard of review. . . . . . . . . . 42-45

B.    Because, via his use and intended use of the shank, Jimenez created a threat of present harm to the officers in the immediate surrounding area, the evidence was sufficient to support an affirmative deadly-weapon finding. . . . . . . . . . . . . . . . . . . . . . . 45-48

C.    Even if the shank was not a deadly weapon in the manner of its use or intended use, it was still a deadly weapon by adaptation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48-51

PRAYER.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

SIGNATURES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

CERTIFICATE OF SERVICE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

# INDEX OF AUTHORITIES

## FEDERAL CASES

*United States v. La Guardia*, 774 F.2d 317 (8th Cir. 1985).. . . . . . . . . . . . . . . . . . 34

## STATE CASES

*Basden v. State*, No. 01-01-00666-CR, 2002 WL 31771167 (Tex.App.–Houston [1[st] Dist.] Dec. 12, 2002, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Black v. State*, No. 2-05-338-CR, 2006 WL 2507325 (Tex.App.–Fort Worth Aug. 31, 2006, pet. ref'd)(mem.op.)(not designated for publication). . . . . . . . . 46, 47, 48

*Breazeale v. State*, 683 S.W.2d 446 (Tex.Crim.App. 1984). . . . . . . . . . . . 13, 23, 24

*Brown v. State*, 716 S.W.2d 939 (Tex.Crim.App. 1986).. . . . . . . . . . . 44, 45, 46, 48

*Brown v. State*, 917 S.W.2d 387 (Tex.App.–Fort Worth 1996, pet. ref'd). . . . . . . 15

*Crittendon v. State*, 923 S.W.2d 632 (Tex.App.–Houston [1[st] Dist.] 1995, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Crumpton v. State*, 301 S.W.3d 663  (Tex.Crim.App. 2009). . . . . . . . . . . . . . . . . 42

*Denham v. State*, 574 S.W.2d 129 (Tex.Crim.App. 1978). . . . . . . . . . . . . 44, 46, 48

*Dowdle v. State*, 11 S.W.3d 233 (Tex.Crim.App. 2000).. . . . . . . . . . . . . . . . . . . . 40

*Eckels v. State*, 220 S.W.2d 175 (Tex.Crim.App. 1949).. . . . . . . . . . . . . . . . . . . . 12

*Ex parte Petty*, 833 S.W.145 (Tex.Crim.App. 1992), *abrogated on other grounds by Ex parte Nelson*, 137 S.W.3d 666 (Tex.Crim.App. 2004). . . . . . . . . . . . . . 28, 35

*Fields v. State*, 507 S.W.3d 333 (Tex.App.–Houston [1[st] Dist.] 2016, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 24

*Fisher v. State*, 01-11-00516-CR, 2013 WL 4680226 (Tex.App.–Houston [1ˢᵗ Dist.] Aug. 29, 2013, pet. ref'd)(mem.op.)(not designated for publication). . . . . . 45

*Garner v. State*, 864 S.W.2d, 103 (Tex.App.–Houston [1ˢᵗ Dist.] 1993, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Hillburn v. State*, 627 S.W.2d 546 (Tex.App.–Amarillo 1982, no pet.). . . . . . . . . 46

*Johnson v. State*, 629 S.W.2d 137 (Tex.App.–Dallas 1982 no pet.). . . . . . . . . . . 13

*Johnson v. State*, 509 S.W.3d 320 (Tex.Crim.App. 2017). . . . . . .   43, 44, 45, 46, 48

*Keller v. State*, 125 S.W.3d 600 (Tex.App.–Houston [1ˢᵗ Dist.] 2003), *pet. dism'd, improvidently granted*, 146 S.W.3d 677 (Tex.Crim.App. 2004). . . . . . . . .   13, 23, 31

*Matlock v. State*, 392 S.W.3d 662 (Tex.Crim.App. 2013). . . . . . . . . . . . . . . . . . . 43

*Mejia v. State*, No. 14-00-00396-CR, 2001 WL 1136138 (Tex.App.–Houston [14ᵗʰ Dist.] Sept. 27, 2001, pet. ref'd)(not designated for publication). . . . . . .   12, 17, 18

*Narron v. State*, 835 S.W.2d 642 (Tex.Crim.App. 1992). . . . . . . . . . . . . . . . . 28, 34

*Patterson v. State*, 769 S.W.2d 938 (Tex.Crim.App. 1989). . . . . . . . .   29, 34, 39, 40

*Pena v. State*, 285 S.W.3d 459 (Tex.Crim.App. 2009). . . . . . . . . . . . . . . . . . . . . . 31

*Plummer v. State*, 410 S.W.3d 855 (Tex.Crim.App. 2013). . . . . . . . . .   28, 35, 36, 37

*Polk v. State*, 693 S.W.2d 391 (Tex.Crim.App. 1985). . . . . . . . . . . . . . . . . . . . . . 42

*Ramon v. State*, No. 04-96-00881-CR, 1997 WL 438755 (Tex.App.–San Antonio Aug. 6, 1997, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Rhoades v. State*, 934 S.W.2d 113 (Tex.Crim.App. 1996). . . . . . . . . . . . . . . . . . . 31

*Richardson v. State*, 508 S.W.2d 380 (Tex.Crim.App. 1974). . . 11, 12, 15, 16, 17, 18

*Shugart v. State*, 32 S.W.3d 355 (Tex.App.–Waco 2000, pet. ref'd). . . . . . . . . . . 50

*Sinegal v. State*, No. 05-91-00209-CR, 1993 WL 15487 (Tex.App.–Dallas Jan. 12, 1993, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Smith v. State*, 51 S.W.3d 806 (Tex.App.–Texarkana 2001, no pet.). . . . . . . . . . 50

*Tanksley v. State*, 656 S.W.2d 194 (Tex.App.–Austin 1983, no pet.). . . . . . . . 47, 48

*Thomas v. State*, 821 S.W.2d 616 (Tex.Crim.App. 1991). . . . . . . . . . 43, 44, 49, 51

*Turner v. State*, 422 S.W.3d 676 (Tex.Crim.App. 2013). . . . . . . . . . . . . 20, 21, 24

*Tyra v. State*, 897 S.W.2d 796 (Tex.Crim.App. 1995). . . . . . . . . . . . . 32, 33, 39, 40

*Vanwright v. State*, 454 S.W.2d 406 (Tex.Crim.App. 1970). . . . . . . . . . . . . . . . . 12

*Wood v. State*, 515 S.W.2d 300 (Tex.Crim.App. 1974). . . . . . . . . . . . . . . . . . . . 17

**STATE STATUTES and RULES**

TEX. CODE CRIM. PROC. art. 26.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. CODE CRIM. PROC. art 26.02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TEX. CODE CRIM. PROC. art 26.03. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. CODE CRIM. PROC. art. 46B.003(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.003(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.004(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.004(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.004(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.004(c-1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.005(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.005(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.005(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.051(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. CODE CRIM. PROC. art. 46B.051(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TEX. PENAL CODE § 1.07(a)(17)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 51

TEX. PENAL CODE § 1.07(a)(17)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

TEX. PENAL CODE § 1.07(a)(46).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

TEX.R.APP.P. 33.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 31

TEX.R.APP.P. 44.2(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## SESSION LAWS

TEX. H.B. 2299, 84th LEG., R.S. (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## STATEMENT OF THE CASE

Efrain Jimenez ("Jimenez") was indicted (and subsequently re-indicted) for possession of a prohibited item in a correctional facility. (CR:9, 19).[1] A jury found him guilty as charged, (RR4:46), and, Jimenez having pleaded "true" to the enhancement allegations in the indictment, (RR5:7), assessed his punishment at 20 years' confinement. (CR:243-44); (RR5:193-94). The trial court sentenced Jimenez in accordance with the jury's verdicts. (CR:243-45). Jimenez timely filed notice of appeal. (CR:261).

---

[1] Throughout this brief, references to the record will be made as follows: references to the clerk's record will be made as "CR" and page number; references to the reporter's record will be made as "RR" and volume and page number; and references to exhibits will be made as either "SX" or "DX."

## STATEMENT OF FACTS[2]

Viewed in the light most favorable to the jury's verdicts, the record and evidence admitted at trial show the following:

### *The indictment*

On September 29, 2015, Jimenez was re-indicted for possession of a prohibited item (a deadly weapon) in a correctional facility. (CR9:9).[3] The indictment alleged that Jimenez used and exhibited a deadly weapon—a sharpened wire—during the commission of and immediate flight from the charged offense. (CR:9).

### *Trial on the merits*

In the afternoon hours of December 2, 2014, Sergeant Maria Santana ("Sgt. Santana") and Corporal Hernandez ("Corp. Hernandez") were standing in front of Jimenez' cell while discussing a recently concluded disciplinary hearing during which Jimenez was found to have committed an administrative-rule violation by calling Corporal Brinks ("Corp. Brinks") a "bitch" and a "whore." (RR3:8-9, 20, 66, 68-69, 71-72). Jimenez was angry about the outcome of the hearing,

---

[2] In addition to the recitation of facts below, the State will set out the relevant factual background for each issue, as needed.

[3] As reflected in the State's "Motion to Carry Over," the re-indictment in this case (trial-court cause number 20150D04711) was based on the same conduct as that of the original indictment (trial-court cause number 20150D01362). (CR:19).

repeatedly cussing and complaining to Sgt. Santana that Corp. Brinks was "a fucking liar,", a "whore," and a "bitch" and that she should not be believed. (RR3:21).

Sgt. Santana and Corp. Hernandez reminded Jimenez that they had followed administrative procedures in arriving at their decision, but Jimenez did not relent in his outbursts. (RR3:21). Upon hearing the commotion, Corporal Figueroa ("Corp. Figueroa") walked over to Jimenez' cell and attempted to diffuse the situation. (RR3:21). Surmising that perhaps Jimenez might calm down if they left, Sgt. Santana and Corp. Hernandez retreated from the area in order to continue administering their duties. (RR3:21-22, 67). On their way out of the cellblock, however, they heard Jimenez become louder and begin to bang and kick the door to his cell, so Sgt. Santana and Corp. Hernandez made their way back. (RR3:22-23). Jimenez continued to yell at the officers about the rule violation, again claiming that Corp. Brinks was a "fucking liar." (RR3:23).

Jimenez refused to listen to any of the officers; instead, his anger escalated, and he began to pace back and forth in his cell. (RR3:23-24). Having made several unsuccessful attempts at containing Jimenez' outbursts, the officers requested additional assistance, and Detention Officer Oscar Ortega ("D.O. Ortega") arrived soon thereafter. (RR3:24, 124-25). D.O. Ortega, too, tried

speaking to Jimenez to calm him down, but Jimenez continued cursing, yelling, kicking the door, and pacing back and forth in his cell. (RR3:24-25, 126-27).

At that point, officers opted to remove Jimenez from his cell and transfer him to the "violent cell" before Jimenez either hurt himself or incited similar, belligerent behavior by inmates in the surrounding cellblocks. (RR3:25, 127). But Jimenez ignored D.O. Ortega's commands, did not allow himself to be handcuffed through the cell door, and kept pacing back and forth inside his cell, so D.O. Ortega asked the guard station to unlock Jimenez' cell door. (RR3:128-29).

When the guard station unlocked Jimenez' cell door, Jimenez approached his bunk and retrieved a "shank" made out of a sharpened fence wire with a towel for a handle. (RR3:129-30). When D.O. Ortega saw the shank, he immediately closed the door and told everyone, "He has a shank." (RR3:25-26, 130); (SX1–the recovered sharpened fence wire).

D.O. Ortega testified that Jimenez held the sharpened wire with a clenched fist, his hand over the towel, and the sharpened end protruding beyond the edge of the towel. (RR3:130-31).[4] Sgt. Santana, who had walked up to the cell door when

---

[4] D.O. Ortega explained that, even when the cell door was closed, he was able to see how Jimenez was holding the shank because the cell door has a clear glass pane as well as a metal mesh panel with openings large enough to pass a pencil through it. (RR3:131). Sgt. Santana described the cell door similarly, adding that there is an opening through which Jimenez could receive his food without officers having to open the door. (RR3:14-15).

she heard that Jimenez had a shank, testified that she saw Jimenez using a white towel to hold onto the shank, that he was holding the shank in his right hand "really tight," and that he was "tensing up and walking back and forth[,] saying he was going to [']fuck somebody up[']."  (RR3:26).

The officers persisted in their attempts to dissuade Jimenez, telling him that "it was not worth it" and asking him to give up the shank so that they could talk about the problem.  (RR3:26-27).  But Jimenez did not yield; rather, with the shank in his hand, he told D.O. Ortega that he (Jimenez) was going to hurt Corp. Figueroa.  (RR3:134).  And when D.O. Ortega, yet again, asked him to calm down, telling him he had nothing to gain by hurting someone, Jimenez retorted, "I don't care.  I'm just going to [hurt one of the officers]" and "I'm going to fuck somebody up[,] open the door[,] just wait[,] open the door."  (RR3:77, 134).[5]

Meanwhile, officers summoned the Special Reaction Team ("SRT"), but after a few minutes (before SRT could arrive), D.O. Ortega was able to talk Jimenez into relinquishing the shank.  (RR3:27, 134-35).  When Jimenez slid the shank underneath the door, D.O. Ortega immediately retrieved it and left the area. (RR3:137-38).[6]

---

[5] During cross-examination, D.O. Ortega testified that he repeatedly yelled at Jimenez, "Hey, give me the shank."  (RR3:143).

[6] D.O. Ortega did not enter Jimenez' cell at any point.  (RR3:139).

-4-

Sgt. Santana described the shank as a sharpened fence wire and stated that she recognized State's Exhibit 1 as the shank Jimenez used to threaten the officers by the length and sharpness of it, as well as how it was "carved into, like, a little handle." (RR3:35, 76); (SX1). She explained that "shank" was a term used by detention officers to describe deadly weapons that can seriously injure or kill someone. (RR3:36-37, 42). She also explained that an inmate could create a shank out of a piece of fence wire by pressing and rubbing it back and forth against the cement floor or walls in his cell, rotating and repeating the process until the wire was fully sharpened. (RR3:14, 54-55, 75-76). Sgt. Santana opined that State's Exhibit 1 was a deadly weapon, explaining that it could cause serious bodily injury, even death, if used to stab someone in the neck, eye, head, or anywhere on the body. (RR3:37).

D.O. Ortega similarly explained that inmates sharpen items by rubbing them against the cement floor. (RR3:121). Such items are prohibited in a correctional facility because they have been altered for a purpose that is "unsafe." (RR3:120-21). When asked why he immediately closed the door after seeing Jimenez reach for the shank, D.O. Ortega explained that the shank was a deadly weapon, that Jimenez could have used it to hurt or kill him, and that he had to protect himself and others. (RR3:137-38).

Sgt. Donald Ende ("Sgt. Ende") also recognized State's Exhibit 1 as the shank that D.O. Ortega had obtained from Jimenez, as it appeared to have been fashioned out of the fence wires at the jail annex, with a curled-up end. (RR3:91).

The jury found Jimenez guilty as charged. (RR4:46). Jimenez pleaded "true" to the enhancement allegations in the indictment, and after hearing the punishment evidence, the jury assessed Jimenez' punishment at 20 years' confinement. (RR5:7, 193-94).

## SUMMARY OF THE STATE'S ARGUMENTS

**The State's reply to Jimenez' first issue (the trial court's alleged failure to arraign Jimenez pre-trial):**

Because Jimenez never objected to the trial court's alleged failure to arraign him, at a time when the trial court could have remedied any such error, he has failed to preserve his complaint for review. But even if Jimenez did not waive error, because the recitals in the judgment, indicating that Jimenez had, in fact, been duly arraigned, are entitled to a presumption of truthfulness and regularity absent affirmative evidence to the contrary (which Jimenez has failed to present), Jimenez' lack-of-arraignment claim must necessarily fail. Furthermore, because Jimenez, represented by counsel, entered his plea to the indictment at his trial on the merits, and because Jimenez' identity as the perpetrator was not an issue at trial, Jimenez waived his right to arraignment, and any error in failing to arraign him pre-trial was rendered harmless. For these reasons, Jimenez' first issue should be overruled.

**The State's reply to Jimenez' second issue (the trial court's alleged failure to conduct a competency trial):**

Because Jimenez failed to lodge any objection to the trial court's alleged failure to conduct a trial on the issue of Jimenez' competency to stand trial, he has waived his right to complain on appeal and presents nothing for review. But even

if Jimenez preserved his complaint, because the trial court's signed, competency order, which is entitled to a presumption of truthfulness and regularity, expressly states that the trial court undertook a formal determination of Jimenez' competency and that the parties specifically waived any right to have a jury determine the issue, in the absence of any affirmative evidence in the record to show that Jimenez at any point invoked his right to a jury in that regard, under the express language of art. 46B.051—which states that it is the trial court, and not the jury, who shall make the determination unless a party registers their preference to have the jury do so—Jimenez' claim that he was improperly denied his right to a trial is wholly unsupported by record and should be overruled.

**The State's reply to Jimenez' third and fourth issues (the propriety of the trial court's entry of a deadly-weapon finding):**

Because Jimenez never complained to the trial court (as he does now on appeal) that it was a legal impossibility for him to be both convicted of illegally possessing a deadly weapon in a correctional facility and to have an affirmative deadly-weapon finding entered in the judgment, Jimenez failed to preserve any error. But even if Jimenez did not waive his complaint, because the record shows that his use and exhibition of the "shank" actually facilitated his commission of, and flight from, the underlying offense, the trial court's entry of a deadly-weapon finding was proper and supported by the evidence. (Issue Three).

And, notwithstanding Jimenez' contentions on appeal that, because he was locked behind a cell door, he was not physically capable of carrying out his threats to assault the detention officers with the shank, where the evidence showed that Jimenez conditioned his threat on the officers foregoing precisely what they had a right to do at the time of the threat (*i.e.*, opening his cell door), displayed the shank, and, by overt action and verbal threats, announced his intent to "fuck up" the officers as soon as they opened his cell door, Jimenez, in the manner of his use and intended use of the shank, created a threat of present serious bodily injury or death to the officers attempting to remove him from his cell. And because, additionally, the undisputed evidence established that the shank was manifestly adapted for the purpose of inflicting serious bodily injury or death, regardless of the actual manner of its use or intended use, the shank was a deadly weapon by adaptation. As such, the evidence was legally sufficient to show that Jimenez used or exhibited a deadly weapon during the commission of, or flight from, the charged offense, and the trial court's entry of a deadly-weapon finding was thus proper. (Issue Four).

For these reasons, Jimenez' third and fourth issues should be overruled.

-9-

## THE STATE'S REPLY TO JIMENEZ' FIRST ISSUE

**Because Jimenez failed to complain about the trial court's alleged failure to arraign him at any point during the proceedings, he has failed to preserve his complaint and presents this Court with nothing for review. In any event, because Jimenez, represented by counsel, entered his plea to the indictment at the trial on the merits, he waived his right to arraignment. And because the indictment was formally read to Jimenez at trial, Jimenez entered his plea thereto, and there was no issue of identity, the purpose of arraignment was fulfilled, such that any error was rendered harmless. Jimenez' first issue should thus be overruled.**

## ARGUMENT AND AUTHORITIES

In his first issue presented for review, Jimenez asserts that he should be granted a new trial because "the record does not reflect that he was arraigned under 20150D04711 [the re-indicted cause number]." *See* (Appellant's Am. Br. at 8).[7] Jimenez further asserts that because no waiver of arraignment is contained in the record and because the wording of article 26.01, which requires that a defendant be arraigned in any case punishable by imprisonment, is mandatory, "a reversal of his case is required." *See* (Appellant's Am. Br. at 8). For the reasons that follow, Jimenez' first issue is without merit and should be overruled.

---

[7] The clerk's record requested by the Appellant does not include the original indictment under trial-court cause number 20150D01362.

## I. Underlying facts

In addition to the facts set out above, which the State herein relies on and adopts, the record further shows that after the jury was empaneled and sworn, the indictment was read in the presence of both Jimenez and the jury, and Jimenez entered his plea of "not guilty." (RR3:5-6). Jimenez was represented by counsel, Thomas S. Hughes. (RR5:2); (CR:243).

The following language was included in the judgment's recitals:

> It appeared to the Court that Defendant was mentally competent and *had pleaded as shown above to the charging instrument*. Both parties announced ready for trial...the indictment was read to the jury, and Defendant entered a plea to the charged offense.

(CR:243)(emphasis added). The words "not guilty" appear under the section of the judgment entitled "plea to the offense." (CR:243).

Both Sgt. Santana and D.O. Ortega positively identified Jimenez as the perpetrator, and Jimenez did not dispute his identity as such. (RR3:19, 125-26).

## II. Because Jimenez never objected in the trial court to the alleged lack of arraignment, he has failed to preserve error and presents nothing for review.

Texas statutory law requires that the defendant be arraigned "[i]n all felony cases, after indictment...." TEX. CODE CRIM. PROC. art. 26.01. However, because arraignment is not part of "trial by jury," it may be waived. *Richardson v. State*,

508 S.W.2d 380, 381 (Tex.Crim.App. 1974)("Because arraignment is not part of trial by jury, it may be waived by a defendant")(citing *Eckels v. State*, 220 S.W.2d 175 (Tex.Crim.App. 1949)). And when a defendant fails to raise the issue before the conclusion of the evidence, he has done just that. *See Eckels*, 220 S.W.2d at 177-78 ("If appellant knew that he was not arraigned and did not want to waive arraignment, he should have raised the question before the conclusion of the evidence and given the trial court an opportunity to have him arraigned."); *Mejia v. State*, No. 14-00-00396-CR, 2001 WL 1136138, at *1-2 (Tex.App.–Houston [14ᵗʰ Dist.] Sept. 27, 2001, pet. ref'd)(not designated for publication)(same); *see also* TEX.R.APP.P. 33.1; *Vanwright v. State*, 454 S.W.2d 406, 408 (Tex.Crim.App. 1970)(appellant waived any failure-to-arraign error when he raised the issue for the first time in a motion for new trial).

Here, Jimenez failed to object at any point during the trial—before or after the close of the evidence—to the trial court's alleged failure to arraign him. Nor does the record otherwise reflect any objection by Jimenez pre-trial. Jimenez has thus failed to preserve his complaint, and for this reason alone, his first issue should be overruled. *See Eckels*, 220 S.W.2d at 177-78; *Mejia*, 2001 WL 1136138 at *1-2.

**III.** **Even if this Court concludes that Jimenez somehow preserved his complaint, Jimenez' first issue should be overruled nonetheless because, absent affirmative evidence to the contrary, this Court must presume that Jimenez was arraigned.**

It is well settled that a presumption of truthfulness and regularity is created by the recitals in a judgment and that, absent affirmative evidence to the contrary, an appellant's bare assertion that he was not arraigned is insufficient to rebut that presumption. *See Breazeale v. State*, 683 S.W.2d 446, 450 (Tex.Crim.App. 1984)("[T]he formal judgment of the trial court carries with it a presumption of regularity and truthfulness, and such is never to be lightly set aside."); *Fields v. State*, 507 S.W.3d 333, 335-36 (Tex.App.–Houston [1st Dist.] 2016, no pet.)(holding that, where the record is silent and thus fails to affirmatively show that appellant was *not* arraigned, appellant failed to rebut the presumption created by the recitals in the judgment that he had been arraigned); *Keller v. State*, 125 S.W.3d 600, 605 (Tex.App.–Houston [1st Dist.] 2003), *pet. dism'd, improvidently granted*, 146 S.W.3d 677 (Tex.Crim.App. 2004)("A presumption of truthfulness and regularity applies to documents filed in the trial court."); *Johnson v. State*, 629 S.W.2d 137, 139 (Tex.App.–Dallas 1982 no pet.)(appellant's testimony in which he claimed the trial judge had failed to admonish him as to the range of punishment was insufficient to rebut the presumption of regularity in the judgment); *Ramon v. State*, No. 04-96-00881-CR, 1997 WL 438755, at *2

(Tex.App.–San Antonio Aug. 6, 1997, pet. ref'd)(not designated for publication)(presuming that appellant was arraigned despite appellant's claim to the contrary); *Sinegal v. State*, No. 05-91-00209-CR, 1993 WL 15487, at *5 (Tex.App.–Dallas Jan. 12, 1993, pet. ref'd)(not designated for publication)(rejecting appellant's claim that he was deprived of effective assistance because the record failed to show that he had been arraigned, reasoning that, absent affirmative evidence to the contrary, the recitals contained in the judgment created a presumption that appellant was, in fact, arraigned). This is especially so when appellant fails to object on the record to any such lack of arraignment. *See Fields*, 507 S.W.3d at 335-36 (relying on the presumption of regularity in the judgment, reasoning, "On such a silent record, and given that [appellant] did not object in the trial court that he had not been properly arraigned, we must presume that he was properly arraigned"). Indeed, Rule 44.2 expressly requires that appellate courts defer to such a presumption, providing, in relevant part:

> (c) <u>Presumptions</u>. Unless the following matters were *disputed in the trial court*, or *unless the record affirmatively shows the contrary*, the court of appeals *must* presume:...
>
> (3) that the defendant was arraigned.

TEX.R.APP.P. 44.2(c)(emphasis added).

Here, not only has Jimenez failed to produce affirmative evidence in support of his claim or even dispute his purported lack of arraignment in the trial court, but the recitals in the judgment directly refute his claim. Referring to the plea of "not guilty" contained on the first page of the judgment, the judgment states that Jimenez "pleaded as shown above to the charging instrument." (CR:243). Absent affirmative evidence to the contrary, this Court should presume that Jimenez was duly arraigned and defer to the presumption of regularity in the judgment. *See Fields*, 507 S.W.3d at 335-36; *Ramon*, 1997 WL 438755 at *2; *Sinegal*, 1993 WL 15487 at *5; *see also Brown v. State*, 917 S.W.2d 387, 390 (Tex.App.–Fort Worth 1996, pet. ref'd)(where judgment stated, "the Court having duly admonished the Defendant as to the consequences of such plea, including the range of punishment...," appellant's testimony that he was unaware of the consequences of his plea was insufficient to rebut the presumption of regularity in the judgment).

Thus, even if this Court finds that Jimenez preserved his complaint for appellate review, Jimenez' first should issue should be overruled for this reason, as well.

IV. **Because Jimenez, represented by counsel, entered a plea to the indictment at his trial on the merits, he waived his right to arraignment.**

When a defendant, represented by counsel, enters a plea to the indictment at the trial on the merits, he waives any right to arraignment. *See Richardson*, 508

-15-

S.W.2d at 381-82 (holding that appellant waived his right to be arraigned where, subsequent to the jury being empaneled and sworn, the indictment was read to appellant at the trial on the merits and appellant, represented by counsel, entered a not-guilty plea thereto). Here, the record shows that, after the jury was empaneled and sworn, and after the indictment was formally read before the jury, Jimenez, who was represented by counsel, entered a plea of "not guilty." (RR3:2, 5-6); (CR:243). Thus, even if Jimenez preserved his complaint despite his failure to object at any point during the trial-court proceedings, and even if Jimenez could somehow overcome the presumption of regularity in the criminal proceedings, he nonetheless waived his right to be arraigned. *See id.*

For this additional reason, Jimenez' first issue should be overruled.

**V.      Because there was no issue of identity, and because Jimenez entered his plea to the indictment at the trial on the merits, any error was harmless.**

Without waiving any of the foregoing, even if Jimenez preserved error, did not waive his right to arraignment, and somehow rebutted the presumption that he was arraigned, for the same reasons discussed above, any trial-court error in failing to arraign him was harmless.

The purpose of arraignment is simply to read the indictment to the accused, hear his plea thereto, and fix his identity. *See* TEX. CODE CRIM. PROC. art 26.02 (Entitled "Purpose of Arraignment," stating, "An arraignment takes place for the

purpose of fixing his identity and hearing his plea."); *Richardson*, 508 S.W.2d at 381; *Mejia*, 2001 WL 1136138 at *2. Although a defendant may not be arraigned any earlier than two days after having been served with a copy of the indictment, statutory law does not specify a proper time for arraignment relative to trial on the merits. *See* TEX. CODE CRIM. PROC. art 26.03 (Entitled, "Time of arraignment"); *Mejia*, 2001 WL 1136138 at *2. However, "the very purpose of arraignment has already been served in most instances if arraignment is delayed until the commencement of trial." *Mejia*, 2001 WL 1136138 at *2. While this makes the ideal time for arraignment that long before trial, it also makes its delay until the commencement of trial harmless. *See Wood v. State*, 515 S.W.2d 300, 303 (Tex.Crim.App. 1974)(noting that the purpose of arraignment has already been served in most instances when it has been delayed until both sides announce ready at trial); *Mejia*, 2001 WL 1136138 at *2.

As noted above, at his trial on the merits, the indictment was formally read to Jimenez, and Jimenez entered his plea thereto. (RR3:5-6). Both Sgt. Santana and D.O. Ortega positively identified Jimenez as the perpetrator, and Jimenez did not dispute his identity as such. (RR3:19, 125-26). Jimenez does not contend (much less demonstrate) that he was surprised by the allegations or that he needed additional time to prepare for trial. Thus, because there was no issue of identity,

and because Jimenez entered his plea to the indictment at his trial on the merits, the purpose of the indictment was fulfilled, such that any error in failing to arraign Jimenez prior to trial was rendered harmless. *See Richardson*, 508 S.W.2d at 381-82 ("There was no purpose for arraignment because appellant had already entered his plea to the indictment at the trial on the merits and there was no question of identity."); *Mejia*, 2001 WL 1136138 at *2 (holding that, because appellant's identity was consistent with the indictment allegations, appellant's presumed not-guilty plea was formally confirmed at trial on the merits, and appellant did not claim to have been surprised by the allegations in the indictment or denied additional time to prepare, any error in failing to arraign appellant prior to trial was harmless).

For this final reason, Jimenez' first issue is without merit and should be overruled.

**THE STATE'S REPLY TO JIMENEZ' SECOND ISSUE**

**The trial court's signed, competency-determination order, which shows that the trial court undertook a formal determination of Jimenez' competency to stand trial, is entitled to a presumption of truthfulness and regularity. And because Jimenez, who merely complains of his alleged deprivation of a competency trial altogether and does not otherwise challenge the trial court's competency determination, has failed to produce affirmative evidence to rebut the presumption of regularity in the proceedings establishing that a bench trial on the issue of competency was, in fact, conducted, his claim necessarily fails and should be overruled.**

**ARGUMENT AND AUTHORITIES**

In his second issue presented for review, Jimenez complains that he was denied a trial on the issue of incompetency, as "no record exists of a trial as contemplated by [article 46B.005(b)]." *See* (Appellant's Am. Br. at 10-11). Because the record, which shows that a bench trial was conducted on the issue of incompetency, directly refutes Jimenez' complaint, and because Jimenez never requested a jury trial on the issue, Jimenez' claim is entirely without merit and should be overruled.

**I. Underlying Facts**

In addition to the facts set out above, which the State herein relies on and adopts, the record further shows that on March 22, 2016, prior to the commencement of trial, the trial court entered an order transferring the case from

competency court back to the original court of jurisdiction. (CR:49–March 22, 2016, order entitled, "Order/Transfer"). The order stated, in pertinent part:

> Be it remembered that on this date...came to be heard the question of the present competency or incompetency of the Defendant.
>
> The jury having been waived, and the parties having appeared in Court, upon announcement of ready by both parties, the parties presented evidence to the Court. Upon both parties resting and the matter having been submitted to the Court, the Court after due deliberation, made the following findings:
>
> Defendant is competent to stand [trial] based on a report from Dr. Cynthia Rivera.

(CR:49). In its order, the trial court further found that Jimenez had both "the present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational understanding of the proceedings against him." (CR:49).[8] Thereafter, the case proceeded to trial on the merits.

## II.  Texas' competency statutes and applicable law on competency

Codifying the constitutional requirements that an incompetent defendant may not be put to trial without violating due process, Texas' statutory scheme delineates the circumstances that require, and the procedures for making, a determination on the matter of a defendant's competency. *See Turner v. State*, 422

---

[8] The order was signed by the trial-court judge, but the signature lines for the respective parties were left blank. (CR:49).

S.W.3d 676, 689 (Tex.Crim.App. 2013). Article 46B.003 states that a person is incompetent to stand trial if he presently lacks either: (1) a sufficient ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational and factual understanding of the proceedings against him. *See* TEX. CODE CRIM. PROC. art. 46B.003(a)(1)-(2). Upon suggestion from any credible source, including the trial court's own observations, Chapter 46B requires the trial court to conduct an "informal inquiry" to determine whether evidence exists to justify a formal competency hearing. *See* TEX. CODE CRIM. PROC. art. 46B.004(a)-(c-1); *Turner*, 422 S.W.3d at 691-92. If, after this first "informal inquiry," setting aside all evidence of competence, the trial court determines that there exists more than a scintilla of evidence that may rationally lead to a conclusion that the defendant is incompetent, unless the parties can agree without a trial that the defendant is incompetent, the trial court must then conduct a formal competency trial. *See* TEX. CODE CRIM. PROC. arts. 46B.004(c), (c-1); 46B.005(a)-(c); *Turner*, 422 S.W.3d at 692. However, unless a party, or the trial court on its own motion, affirmatively requests a trial by jury, it is the trial court—not a jury—that makes the determination of competency. *See* TEX. CODE CRIM. PROC. art. 46B.051(a), (b); *Turner*, 422 S.W.3d at 692 n. 35 (noting that while the former statutory scheme required that a jury be empaneled to determine competency, "under the

current statute, the trial court makes the ultimate determination with respect to competency unless either of the parties or the trial court itself registers a preference that 'a jury shall make that determination.'")(citing TEX. CODE CRIM. PROC. art. 46B.051).

**III.   Because the trial court's signed, written order shows that, upon a formal hearing on the matter of competency, neither Jimenez, the State, nor the trial court requested a jury trial on the issue of competency, Jimenez has failed to demonstrate that he was unduly denied either a competency trial by jury or a competency trial altogether.**

Jimenez complains that he was "entitled to a formal adjudication of the incompetency issue under Art. 46B." *See* (Appellant's Am. Br. at 11).[9] Specifically, Jimenez asserts that because the trial court ordered a competency examination, it must have had before it some evidence that could have supported a finding of incompetency, thus meeting the threshold requirement for a formal inquiry on the matter and entitling him to "a trial on the issue of incompetency under subsection (b)" of Article 46B.005. *See* (Appellant's Am. Br. at 11). Relying on the lack of a reporter's record of a competency trial in the record on appeal, Jimenez asserts that *no trial* was conducted. *See* (Appellant's Am. Br. at 11). Setting aside whether the trial court actually had before it any evidence to

---

[9] Jimenez does not complain about the ultimate determination of competency, *i.e.*, he does not assert, let alone seek to establish, that he was actually incompetent to stand trial. *See* (Appellant's Am. Br. at 8-11).

-22-

meet the minimal threshold to initiate an informal inquiry in the first place, Jimenez' complaint that he was deprived of *a trial* altogether is entirely unsupported by the record.

As discussed above, court documents filed in the trial court are entitled to a presumption of regularity and truthfulness. *See Breazeale*, 683 S.W.2d at 450; *Keller*, 125 S.W.3d at 605. Included in the record of this case is an order, signed by the trial judge, establishing that a formal determination—albeit by the trial court rather than a jury—was conducted on the matter of Jimenez' competency to stand trial. (CR:49–March 22, 2016, order entitled, "Order/Transfer"). In that order, the trial judge noted that the parties "waived the jury," "announced ready," "presented evidence," and "rested" before submitting the issue to the trial court for its determination, and that "after due deliberation," the trial court determined that Jimenez was competent. (CR:49). The trial court's order (or competency judgment) thus creates a presumption that the trial court actually undertook a formal determination of Jimenez' competency, and Jimenez has failed to present any affirmative in the record to the contrary. *See Breazeale*, 683 S.W.2d at 450 ("[T]he formal judgment of the trial court carries with it a presumption of regularity and truthfulness, and such is never to be lightly set aside."); *Keller*, 125 S.W.3d at 605 ("A presumption of truthfulness and regularity applies to

documents filed in the trial court."). And any "silence" in the record, by way of

the absence of a reporter's record of the bench trial, cannot operate to rebut that

presumption. *See Fields*, 507 S.W.3d at 335-36 (relying on the presumption of

regularity in the judgment and holding that silence in the record on the

complained-of deficiency in the proceedings was insufficient to rebut that

presumption). As such, Jimenez' complaint that he was denied "a trial" on the

issue of competency is without merit and directly refuted by the record.[10] *See*

*Breazeale*, 683 S.W.2d at 450-51 (where judgment stated that appellant had

waived his right of trial by jury, no issue was made as to whether the jury had been

waived, appellant did not claim that he actually requested a jury trial, and the

record was otherwise silent as to appellant's jury waiver, appellant failed to rebut

the presumption of regularity and truthfulness of the judgment).

---

[10] To the extent that Jimenez' complaint can be construed as complaining of his alleged deprivation of a *jury* trial (rather than a trial altogether), any such complaint is without merit, as Jimenez is required by statute to request a jury trial before he is entitled to one, and absent such a request, it is the trial court that is the ultimate fact-finder on the issue of incompetency. *See* TEX. CODE CRIM. PROC. art. 46B.051(a)(providing that "*on the request* of either party or the motion of the court, a jury shall make the determination")(emphasis added); TEX. CODE CRIM. PROC. art. 46B.051(b)(providing that "*the court* shall make the determination of incompetency if a jury determination is not required by Subsection (a)")(emphasis added); *Turner*, 422 S.W.3d at 692 n. 35 (noting that while the former statutory scheme required that a jury be empaneled to determine competency, "under the current statute, *the trial court* makes the ultimate determination with respect to competency *unless either of the parties* or the trial court itself *registers a preference that 'a jury shall make that determination*.'")(emphasis added).

For this reason, Jimenez' competency-trial claim is meritless and unsupported by the record, and this Court should thus overrule Jimenez' second issue.

**THE STATE'S REPLY TO JIMENEZ' THIRD AND FOURTH ISSUES**[11]

**Because Jimenez failed to object to the State's alleged impermissible pursuit of both a conviction and a deadly-weapon finding on the basis of his possession of the same deadly weapon, he has waived his right to complain on that basis on appeal, and his third issue should be overruled for this reason alone. But even if Jimenez preserved his complaint, because the evidence showed that, rather than merely possessing the shank, Jimenez affirmatively employed the shank for the specific purpose of inflicting, at the very least, serious bodily injury on at least one of the officers attempting to remove him from his cell, Jimenez' use of the shank actually facilitated both his commission of the underlying offense (possession of the shank) and his flight therefrom, thus meeting the "facilitation-nexus" rule under *Plummer* and making the entry of an affirmative deadly-weapon finding proper (Issue Three). And because: (1) the manner of Jimenez' use and intended use created a threat of present physical harm to the officers in the vicinity; and (2) the undisputed evidence showed that the shank was adapted for the purpose of inflicting serious bodily injury or death, the evidence in support of the affirmative-deadly weapon finding was legally sufficient (Issue Four). As such, the trial court's entry of a deadly-weapon finding was proper, and Jimenez' third and fourth issues should be overruled.**

## ARGUMENT AND AUTHORITIES

In his third issue, Jimenez asserts that the judgment's affirmative deadly-weapon finding was precluded by virtue of the type of offense for which he was convicted. Specifically, Jimenez argues that because the offense (possession of a prohibited item in a correctional facility) was complete upon his possession of the prohibited weapon, his "mere possession" could not serve to facilitate the

_____

[11] Because Jimenez' third and fourth issues both challenge the appropriateness of the judgment's deadly-weapon finding, the State will address both issues in a single reply.

-26-

prohibited-weapon offense, such that the deadly-weapon finding was entered in error and should be deleted from the judgment. *See* (Appellant's Am. Br. at 11-12). And in his fourth issue, Jimenez asserts that the evidence was legally insufficient to show that the manner in which he used or intended to use the "shank" was capable of causing serious bodily injury or death, such that the deadly-weapon finding should be deleted on this basis, as well. *See* (Appellant's Am. Br. at 12-13). But because Jimenez did more than merely possess the shank (Issue Three), and because the evidence showed that Jimenez employed and intended to use the shank for the specific purpose of inflicting serious bodily injury or death, the very purpose for which the shank had been manifestly adapted, (Issue Four), the deadly-weapon finding was properly entered and supported by the evidence, and Jimenez' third and fourth issues should be overruled.

## I.    Underlying Facts

In addition to the facts set out above, which the State herein relies on and adopts, the record further shows that the indictment alleged that Jimenez used and exhibited a deadly weapon, namely, a sharpened wire, during the commission of, and immediate flight from, the charged offense. (CR:9).

At trial, the jury was charged that if it found beyond a reasonable doubt that Jimenez, on or about the alleged date, intentionally or knowingly possessed a

deadly weapon, to wit: a sharpened wire, that in the manner of its use and intended use was capable of causing death or serious bodily injury, while in a correctional facility, then it should find Jimenez guilty "as charged in the indictment." (CR:230). The court's charge also defined "deadly weapon" as:

> [A] firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything in the manner of its use or intended use that is capable of causing death or serious bodily injury.

(CR:229-30). The jury returned a general verdict, expressly finding Jimenez guilty "as charged in the [i]ndictment." (CR:233). Thereafter, the trial court entered in the judgment an affirmative deadly-weapon finding. (CR:243–judgment reflecting "sharpened wire" under the deadly-weapon section of the judgment).

**II.    Because the evidence showed that, rather than merely possessing the shank, Jimenez affirmatively employed the shank for the specific purpose of inflicting, at the very least, serious bodily injury on at least one of the officers attempting to remove him from his cell, Jimenez' use of the shank actually facilitated both his commission of the underlying offense (possession of the shank) and his flight therefrom, thus meeting the "facilitation-nexus" rule under *Plummer*. As such, the trial court's entry of a deadly-weapon finding was proper (Issue Three).**

Citing *Plummer v. State*, 410 S.W.3d 855 (Tex.Crim.App. 2013); *Ex parte Petty*, 833 S.W.145 (Tex.Crim.App. 1992), *abrogated on other grounds by Ex parte Nelson*, 137 S.W.3d 666 (Tex.Crim.App. 2004); *Narron v. State*, 835

S.W.2d 642 (Tex.Crim.App. 1992); and *Patterson v. State*, 769 S.W.2d 938 (Tex.Crim.App. 1989), Jimenez asserts that the deadly-weapon finding in his judgment should be deleted because his mere possession of the shank cannot, as a matter of law, facilitate his commission of a prohibited-weapon offense because such an offense is not a "collateral, separate offense." *See* (Appellant's Am. Br. at 11). Specifically, Jimenez reasons that because the shank was the basis of *both* his prohibited-weapon conviction and the deadly-weapon finding, this type of "double-dipping" was impermissible under the Court of Criminal Appeals' deadly-weapon jurisprudence. *See* (Appellant's Bt. at 12–wherein Appellant asserts that "[t]he sharpened wire was the basis for his conviction and the deadly weapon finding in his case....This is contrary to the holding in all the Tex. Crim. App. cases cited above.").

As will be discussed below, aside from the fact that Jimenez wholly failed to preserve his complaint, Jimenez' contentions are flawed in several respects. First, Jimenez' assertion that a deadly weapon cannot form both an element of the underlying felony and the basis of the deadly-weapon finding itself has been flatly rejected by the Court of Criminal Appeals and is thus without any merit. Second, while it is true that under *Narron*, an affirmative deadly-weapon finding is barred where the prohibition of the deadly weapon's possession itself is the gravamen of

the offense and the deadly-weapon finding is based *solely on the mere possession* of that very weapon, in this case, Jimenez did more than "merely possess" the shank, and thus, *Narron* simply does not apply. And finally, under *Narron*, *Patterson*, and *Plummer*, even "mere" possession can form the proper basis of a deadly-weapon finding if it nonetheless "facilitates" the commission of the underlying felony, and here, Jimenez' employment of the shank facilitated his commission of the prohibited-weapon offense because it enabled not only his initial possession of it, but also his continued possession and flight therefrom.

**A.    Because Jimenez never objected to the State's alleged improper attempt to pursue both a conviction and a deadly-weapon finding on the basis of the same deadly weapon, Jimenez failed to preserve his complaint and presents nothing for review.**

Jimenez complains that because the State sought to convict him for unlawfully possessing a deadly weapon in a penal institution, the trial court was precluded form entering an affirmative deadly-weapon finding upon the basis of the very weapon he was convicted of illegally possessing. *See* (Appellant's Am. Br. at 12). The indictment in this case alleged that Jimenez illegally possessed a prohibited weapon, to wit: a sharpened wire, and that he also used and exhibited a deadly weapon—that very-same sharpened wire—during his commission of, and flight from, the charged offense. (CR:9). Yet, Jimenez never objected to the indictment on that basis or otherwise alerted the trial court that he believed the

-30-

State was precluded from seeking both a conviction and a deadly-weapon finding on the basis of the same item possessed (the sharpened wire). It is a well-settled principle of law that to preserve a complaint for appellate review, a defendant must object timely to the trial court. *See, e.g.*, TEX.R.APP.P. 33.1; *Pena v. State*, 285 S.W.3d 459, 463-64 (Tex.Crim.App. 2009); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.Crim.App. 1996).[12] By failing to alert the trial court that he believed the State to be legally precluded from seeking a deadly-weapon finding in addition to seeking a conviction for his illegal possession thereof, Jimenez failed to preserve his complaint for review, and for this reason alone, this Court should overrule his third issue. *See Keller*, 125 S.W.3d at 603 (where appellant complained on appeal that it was legally impossible for him to be convicted of using or exhibiting a deadly weapon during the course of the solicitation offense because the offense was already complete when the weapon was recovered, appellant waived any such claim when he raised no issue or otherwise alerted the trial court to his objection to the legality of his guilty plea and conviction).

---

[12] The State recognizes that legal-sufficiency claims are ordinarily exempt from the usual preservation requirements. However, as discussed below, at least one Texas court of appeals has regarded a claim such as the one brought forth by Jimenez in his third issue as the type that is still subject to the general preservation and waiver rules.

**B.**     **The Court of Criminal Appeals has expressly held that *any* felony is theoretically susceptible to a deadly-weapon finding, even if the use of the weapon itself also serves to fulfill one of the elements of the offense.**

While Jimenez contends that because the shank served to fulfill one of the

elements of the offense for which he was convicted, it could not then also supply

the basis of the deadly-weapon finding, the Court of Criminal Appeals has

expressly rejected such an argument. The appellant in *Tyra*, relying on *Narron*

and *Ex parte Petty* (like Jimenez does here), argued that a deadly weapon could

never be "used" within the meaning of Texas' statutes unless is was utilized to

achieve the commission of a felony "separate and distinct" from "mere"

possession, *i.e.*, if the weapon was used to commit the offense, then it could not

also be used to support a deadly-weapon finding. *See Tyra v. State*, 897 S.W.2d

796, 798 (Tex.Crim.App. 1995); *see also* (Appellant's Am. Br. at 12). In rejecting

the appellant's contention, the Court of Criminal Appeals reasoned that the phrase

"use or exhibition of a deadly weapon" under article 42.12 § 3g(a)(2)[13] was subject

to the "broadest possible understanding in [the] context of which it was reasonably

---

[13] Effective January 1, 2017, Chapter 42A of the Code of Criminal Procedure replaced article 42.12 of the Code of Criminal Procedure, purporting to be a non-substantive revision of article 42.12 in its entirety. TEX. H.B. 2299, 84ᵀᴴ LEG., R.S. (2015). Because Jimenez was convicted on April 18, 2017, and the deadly-weapon finding was entered in the judgment on April 24, 2017, article 42A.054(b), which makes the same provisions for deadly-weapon findings as did its article 42.12 predecessor, applies here.

susceptible in ordinary English" and held that *Narron* and *Ex parte Petty* "do *not* stand for the proposition that [the statutory phrase] necessarily means 'used or exhibited a deadly weapon during the commission of an offense which does not otherwise require the use or exhibition of a deadly weapon.'" *Tyra*, 897 S.W.2d at 798 (emphasis added). The Court further explained that the fact that an offense may, by its very nature, always involve the use of a deadly weapon does not change the meaning of the statutory phrase "used a deadly weapon," as "there is simply nothing in the phrase...to imply that it must always be used to commit an 'associated offense.'" *Id.*[14]

Thus, as will be discussed below, the question is not whether the deadly weapon also served to fulfill an element of the offense (and was thus barred, as Jimenez asserts), but rather, whether the use (including simple possession) or exhibition of the weapon actually *facilitated* the commission of, or flight from, the underlying felony.

---

[14] In a concurring opinion, Judge Baird, reiterating that a deadly-weapon finding was not barred *per se* in prohibited-weapon cases, elaborated on the Court's holdings in *Narron* and *Ex parte Petty*, stating that the fact that those cases involved an offense that sought to punish the actual possession of a weapon "did not preclude an affirmative finding in a prosecution for illegal possession of a firearm where the weapon is employed in some manner in addition to its mere possession." *Id.* at 801 (Baird, J., concurring).

**C.** *Narron*, *Ex parte Petty*, *Patterson*, **and** *Plummer*—**the "facilitation-nexus" rule**

In *Narron*, the defendant was convicted of possession of a prohibited weapon, a short-barrel shotgun, and the trial court entered an affirmative deadly-weapon finding. *See Narron*, 835 S.W.2d at 642. In a *per curium* opinion, reasoning that the facts of that case were distinguishable from those in *Patterson* (in which the defendant "used" the weapon to protect his possession of illegal drugs in that it inherently facilitated his possession of the contraband, *see Patterson*, 769 S.W.2d at 941-42),[15] the Court of Criminal Appeals held that "because there was no associated felony *facilitated* by appellant's possession of the [short-barrel shotgun]," appellant did not "use" the weapon to achieve his commission of the felony offense "separate and distinct from 'mere' possession." *See Narron*, 835 S.W.2d at 644 (emphasis added); *see Patterson*, 769 S.W.2d at 941 ("use" of a deadly weapon in this context includes "simple possession" if it facilitates the associated felony). And that same day, the Court of Criminal Appeals likewise held in *Ex Parte Petty* that a deadly-weapon finding based

---

[15] The *Patterson* Court, adopting the 2nd Circuit's reasoning in *United States v. La Guardia*, 774 F.2d 317 (8th Cir. 1985), that "weapons had undoubted utility in the protection of the valuable supply and cash on hand," reasoned that appellant's simple possession of the firearm had utility in his protection of the drugs, even though, when officers executed a search warrant and found appellant sitting on the living-room sofa, all appellant did was inform the officers that he had a gun in a gun boot situated between his left leg and the end of the sofa, but announced that he "[was] not going to touch it." *See Patterson*, 769 S.W.2d at 939, 941-42.

"*solely* on [appellant's] unlawful possession of a handgun, the only offense with which [he] was charged," was entered in error. *See Ex parte Petty*, 833 S.W.2d at 145-46 (emphasis added).

But in its 2013 decision in *Plummer*, the Court of Criminal Appeals clarified the *Narron-Patterson* rule, expressly recognizing three specific expansions of the rule: (1) the deadly-weapon statutory definition "includes *any* instrument that threatens or causes serious bodily injury, even when [it] is not inherently or intentionally deadly"; (2) deadly-weapon findings are permitted "when the jury [can] infer, in the absence of actual harm or threat, that the weapon 'facilitated' the associated felony;" and (3) deadly-weapon findings could be proper even when the weapon is not found on or near the defendant, if such passive possession of the weapon facilitated the commission of the offense. *See Plummer*, 410 S.W.3d at 859 (emphasis in original). And in summarizing the outer limits on permissible deadly-weapon findings, the Court of Criminal Appeals reiterated its "facilitation-nexus" rule, requiring that the possession of the weapon, be it active or passive ("mere") possession, *actually facilitate* the commission of the offense, even if the use or exhibition of the deadly weapon operates to both fulfill an element of the offense *and* supply the basis of the deadly-weapon finding itself. *See Plummer*, 410 S.W.3d at 860-61 (stating that a

weapon's inherent "persuasive impact" can facilitate an offense, as in the case of a solicitation-of-capital-murder offense, because the "mere" possession of the weapon during the course of the defendant's request "enhances" his solicitation request; that a deadly-weapon finding is proper when the weapon facilitates the underlying offense even though it was not overtly used; and that displaying, without overtly using, a deadly weapon to threaten harm while committing a felony "still provides intimidation value that assists the commission of the felony," explaining that "the determining factor is that the deadly weapon was 'used' *in facilitating* the underlying crime)(emphasis in original).[16]

In short, the culmination of the *Narron*, *Ex parte Petty*, and *Patterson* line of cases is this: without regard to whether the deadly weapon itself was an instrumentality of the underlying offense, (1) "mere" possession of a deadly weapon is sufficient to support a deadly-weapon finding if it nonetheless facilitates the commission of the offense; and (2) conversely, overt "use" of the

---

[16] Contrary to Jimenez' assertions, the *Plummer* Court did not set out a bright-line rule that "mere possession of a deadly weapon during a felony offense is not covered by the statute." *See* (Appellant's Am. Br. at 12). Rather, based on the above-detailed discussion, the Court ultimately found that there was "no facilitation connection" between the deadly weapon (the mere wearing of a handgun on a holster belt) and the underlying offense (possession of body armor), in that there was no evidence that the possession of one *facilitated* the other—in other words, appellant did not "use" the handgun to contribute to the result of simply wearing the prohibited body armor. *See Plummer*, 410 S.W.3d at 864. Thus, the Court's decision hinged not on whether appellant "merely possessed" the deadly weapon, but rather on whether his mere possession of it *facilitated* the underlying felony.

weapon, despite being more than "mere" possession, does not support a deadly-weapon finding if it nonetheless does nothing to facilitate the offense. *See Plummer*, 410 S.W.3d at 863-64 (applying the facilitation-nexus rule to several hypothetical scenarios, concluding that: a bank robber who tells the teller he has a gun but does not display or otherwise employ the gun nonetheless has "used" the gun as a deadly weapon because it facilitated his robbery; that a butcher that, while prominently displaying an 18-inch knife, illegally dispenses cooking oil into a nearby lake has not "used or exhibited" the knife because it in no way facilitated the unauthorized-discharge felony; and that an intoxicated driver that prominently displays his hunting rifle on a rack in the cab of his truck has not "used or exhibited" a deadly weapon because the rifle's display was wholly unrelated to the commission of the DWI-felony offense).

As will be discussed below, Jimenez' possession and use of the shank meets *Plummer's* facilitation-nexus rule.

> **D. Jimenez' use of the shank actually facilitated both his commission of the predicate offense (possession of the shank) and his flight therefrom, thus meeting the facilitation-nexus rule.**

Here, the record shows that Jimenez did more than merely possess the shank; instead, Jimenez put the shank into action in a manner that increased the risk of harm to any one of the officers in the vicinity and enabled, continued, and

-37-

enhanced his possession of the shank (the prohibited weapon), such that he "used" and "exhibited" the shank to facilitate his commission of the underlying felony. The testimony of Sgt. Santana and D.O. Ortega showed that Jimenez, in an emotionally charged and agitated state, refused to cooperate with officers and became physically violent, (RR3:21-25, 126-27); that when officers attempted to transfer him to the jail's violent cell, Jimenez retrieved a metal shank, secured it onto his hand by wrapping a towel around it, held it with a clenched fist while the sharp edge of the wire protruded out in front of him, and then threatened to "fuck somebody up" as soon as the officers opened his cell door, (RR3:25-26, 77, 127-31, 134); and that when officers repeatedly attempted to dissuade Jimenez and talk him into giving up the shank, Jimenez continued to pace inside his cell with the shank in hand, insisting that he simply did not care about the consequences of his actions and repeatedly asserting that he was going to hurt one of the officers and "fuck somebody up." (RR3:26-27, 77, 134). And while Jimenez ultimately relinquished the shank, he did not do so before repeatedly refusing D.O. Ortega's numerous instructions to give up the shank and, time and again, threatening to "fuck up" one of the officers as soon as they opened his cell door. (RR3:26-27, 77, 134, 143). In doing so, Jimenez employed the shank to his advantage, using the shank's persuasive effect of creating a danger of death or seriously bodily

injury (by taking it into his hand and putting it into action for the purpose of harming the officers), thus ensuring that the officers would not be able to dispossess him of the shank—or at least not without risking serious bodily injury or death. (RR3:37–wherein Sgt. Santana testified that the shank was a deadly weapon because it could be used to stab someone in the neck, eye, head, or elsewhere and cause serious bodily injury or death); (RR3:137–wherein D.O. Ortega testified that Jimenez could have hurt or killed him with the shank); *see also Tyra*, 897 S.W.2d at 798; *Patterson*, 769 S.W.2d at 940-41 (cases noting that the verb "use" can mean a number of things, including "to have recourse to or enjoyment of" a thing, "to put into action or service," "to apply to advantage," or "to utilize"). In other words, in the course of threatening the officers with a shank he demonstrated—by overt action—he was ready to deploy, Jimenez deterred the officers from attempting to dispossess him of it, thus aiding and protecting (and thereby facilitating) his continued possession of the shank. And in creating a risk of harm to the officers, deterring them from attempting to physically apprehend him, Jimenez' use of the shank ultimately aided in his "flight" from the offense. Indeed, by taking the shank into his hand, Jimenez caused D.O. Ortega to immediately retreat and close the door to his cell, and D.O. Ortega never attempted to re-enter the cell, even after Jimenez finally relinquished the shank. (RR3:25-26,

136-139). Simply, by arming himself with the shank in the manner that he did—by holding it at the ready in his right hand and assuring the officers that he would use it to "fuck them up" as soon as they opened his cell door—such that anyone would be deterred from even attempting to dispossess him of it, Jimenez' use of the shank *actually facilitated* his commission of the prohibited-weapon felony and his immediate flight therefrom. *See Dowdle v. State*, 11 S.W.3d 233, 238 (Tex.Crim.App. 2000)(citing with approval the Austin Court of Appeals' reasoning in *Patterson* that use "certainly refers to the wielding of a firearm with effect, but it extends as well to any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony" and holding that where a deadly weapon is deliberately situated for the convenient access by the defendant for the specific purpose of assisting him in the unimpeded commission of the offense, the defendant has "used" the deadly weapon); *Tyra*, 897 S.W.2d at 801 (citing *Garner v. State*, 864 S.W.2d 92, 103 (Tex.App.–Houston [1st Dist.] 1993, pet. ref'd), and explaining that where, exactly like the situation in this case, "a felon possessing a firearm exposed the weapon to prevent others from taking it, the weapon would have been 'used' for the purposes of a deadly[-] weapon finding" in a possession-of-firearm-by-felon prosecution).

For these reasons, because the evidence showed that Jimenez used and exhibited the shank in order to facilitate his continued possession of the shank and the commission of the prohibited-weapon offense and his flight therefrom, Jimenez has failed to show that the deadly-weapon finding was barred as a matter of law. Accordingly, Jimenez' third issue should be overruled.

**III. Because the evidence showed that Jimenez effectuated a threat of present harm to the officers situated in close physical proximity to his cell, and because the evidence established that the shank had been adapted for the purpose of inflicting death or serious bodily injury, the evidence was legally sufficient to support the deadly-weapon finding (Issue Four).**

In his fourth issue, Jimenez asserts that he was never "in a position to injure anyone" because neither Sgt. Santana nor D.O. Ortega testified that they were "in fear of bodily injury" and Jimenez remained at all times during the incident locked in his cell, such that the evidence of his use and intended use of the shank was insufficient to meet the statutory definition of a deadly weapon and the deadly-weapon finding should be deleted from the judgment. *See* (Appellant's Am. Br. at 13).[17] In other words, Jimenez asserts that because he was incapable of actually causing death or serious bodily injury with the shank, the evidence was

---

[17] In his brief, Jimenez specifically prays only that the affirmative deadly-weapon finding be deleted and does not otherwise challenge the sufficiency of the evidence of his conviction. *See* (Appellant's Am. Br. at 12-13)

insufficient to show that the shank was a deadly weapon. *See* (Appellant's Am. Br. at 13).

For the reasons that follow, Jimenez' contention is without merit and should be overruled.[18]

### A.    Generally applicable law and standard of review

The Texas Penal Code defines "deadly weapon" as:

(A) a firearm or *anything* manifestly designed, made, or *adapted* for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or *intended use* is capable of causing death or serious bodily injury.

---

[18]  In Jimenez' argument section for issue four, he alludes to the fact that "in addition, a deadly weapon special issue was not submitted to the jury as a special issue and [sic] neither in the guilt-innocence jury charge nor the punishment charge." *See* (Appellant's Am. Br. at 13).  To the extent that Jimenez asserts that the trial court was barred from entering an affirmative deadly-weapon finding unless the issue of a deadly weapon was specifically submitted to the jury as a special issue, well-settled case law holds the contrary.

The record shows that the indictment contained a deadly-weapon allegation, specifically, that Jimenez used and exhibited a deadly weapon, to wit: a sharpened wire, during the commission of, and immediate flight from, the charged offense. (CR:9).  The jury returned a general verdict, expressly finding Jimenez guilty "as charged in the [i]ndictment." (CR:233).  Thus, because the jury found Jimenez guilty *as charged in the indictment*, which indictment contained a deadly-weapon allegation, pursuant to the jury's general verdict, the trial court was authorized to enter an affirmative deadly-weapon finding in the judgment. *See, e.g.*, *Crumpton v. State*, 301 S.W.3d 663, 665 (Tex.Crim.App. 2009)(where the indictment expressly alleges that appellant committed the offense by using a deadly weapon, the jury's guilty verdict finding appellant guilty "as included in the indictment" was necessarily a finding that a deadly weapon was used to commit the offense, authorizing the trial court to enter an affirmative deadly-weapon finding in the judgment); *Polk v. State*, 693 S.W.2d 391, 394 (Tex.Crim.App. 1985)("[I]f the indictment by allegation specifically places the [deadly weapon] issue before the trier of fact..., then an affirmative finding is *de facto* made when the defendant is found guilty 'as charged in the indictment.'").  Any complaint by Jimenez in this regard is thus without any merit and should be overruled.

TEX. PENAL CODE § 1.07(a)(17)(A)-(B)(emphasis added). "Serious bodily injury" is, in turn, defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE § 1.07(a)(46).

In reviewing the sufficiency of the evidence, in order to determine whether *any* rational juror could have found all the elements of the charged offense beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict, a reviewing court considers the combined and cumulative force of all of the evidence admitted, along with all reasonable inferences therefrom. *See Johnson v. State*, 509 S.W.3d 320, 322 (Tex.Crim.App. 2017); *Matlock v. State*, 392 S.W.3d 662, 667 (Tex.Crim.App. 2013). Specifically, with respect to whether the State has proven that an object is a deadly weapon (and contrary to Jimenez' contentions on appeal), the Court of Criminal Appeals has expressly rejected any notion that the State must show that a weapon was "capable" (in the manner of its actual use) of causing serious bodily injury or death. *See Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991)("It is not necessary to verify that the object was really capable of causing death, either in the manner of its actual use or in the manner of its intended use."). After all, the manner of the defendant's *intended* use of the weapon, *or* its manifest design or adaptation, alone, can supply a sufficient basis

-43-

for finding that the item used by the defendant was, indeed, "deadly." *See*

*Johnson*, 509 S.W.3d at 323 (stating that a deadly-weapon finding is sufficiently

supported by the evidence if the fact-finder could rationally find that the defendant

either "used the [weapon] in such a way, *or intended to use* [the weapon] in such a

way, that it was capable of causing serious bodily injury or death")(emphasis

added); *Thomas*, 821 S.W.2d at 620 (holding that the State may prove that an

object is a deadly weapon "by adducing sufficient evidence that it was, in fact,

'manifestly designed, made, or adapted for the purpose of inflicting death or

serious bodily injury[.]' If the evidence is adequate for such purpose, then it is

sufficient to establish the object as a deadly weapon. No other proof is required.");

*Brown v. State*, 716 S.W.2d 939, 946 (Tex.Crim.App. 1986)("The State must

prove the [weapon] alleged is capable of causing serious bodily injury or death in

the manner of its use or *intended use*.")(emphasis in original); *Denham v. State*,

574 S.W.2d 129, 130 (Tex.Crim.App. 1978)(noting that the current penal-code

definition specifically includes the weapon's "intended use").

In determining whether a weapon is deadly in its manner of use or intended

use, a reviewing court considers, but is not necessarily bound by: (1) the words

and other threatening actions by the defendant, including the proximity to the

victim; (2) the weapon's ability to inflict serious bodily injury or death, including

-44-

the size, shape, and sharpness of the weapon; and (3) the manner in which the defendant used the weapon.  *See Johnson*, 509 S.W.3d at 323 (listing the above-mentioned factors but explaining that they "are just factors used to guide a court's sufficiency analysis; they are not inexorable commands").  Ultimately, each case must be examined on its own facts to determine whether the manner of use or intended use of the weapon was such as to allow the fact-finder to infer that a weapon was deadly.  *See Brown*, 716 S.W.2d at 946-47; *Fisher v. State*, 01-11-00516-CR, 2013 WL 4680226, at *3 (Tex.App.–Houston [1ˢᵗ Dist.] Aug. 29, 2013, pet. ref'd)(mem.op.)(not designated for publication).

**B.    Because, via his use and intended use of the shank, Jimenez created a threat of present harm to the officers in the immediate surrounding area, the evidence was sufficient to support an affirmative deadly-weapon finding.**

Jimenez appears to argue that because it was not possible for him to actually injure any of the officers after they effectively prevented him from carrying out his intended purpose (by closing his cell door upon discovering the shank in his hand and ultimately persuading him to relinquish the shank), the shank was not a "deadly" weapon.  *See* (Appellant's Am. Br. at 13).  Jimenez' contentions miss the mark, as it is well-settled that a defendant need not actually inflict injury on another in order for the weapon to constitute a "deadly" one, nor does the presence of a physical barrier foreclose the infliction of a threat of present harm.  *See*

*Johnson*, 509 S.W.3d at 323 ("[A] defendant need not have actually inflicted harm on the victim")(citing *Brown*, 716 S.W.2d at 946); *Denham*, 574 S.W.2d at 130; *Hillburn v. State*, 627 S.W.2d 546, 548 (Tex.App.–Amarillo 1982, no pet.)(holding that threat of bodily injury was imminent despite the fact that appellant, who brandished a knife while threatening the victim, could not have consummated his threat because "locked car doors negated any ability to cause physical harm" to the victim); *Black v. State*, No. 2-05-338-CR, 2006 WL 2507325, at *4 (Tex.App.–Fort Worth Aug. 31, 2006, pet. ref'd)(mem.op.)(not designated for publication)(holding that appellant had the present ability to carry out his threat to "slice up" the victim even though appellant and the victim each sat in separate cars when appellant made the threat).

Here, even though Jimenez was temporarily prohibited from carrying out his threat to "fuck up" the officers with his shank after D.O. Ortega retreated from Jimenez' cell and locked the door (assuming that none of the officers were close enough to the cell door or to Jimenez such that he could have stabbed any one of them through the mesh lining or the food-transfer slot of the door), Jimenez announced his intent to assault at least one of the officers as soon as they opened his door—something that, as indicated by the officers' deployment of the SRT, would soon come to pass. (RR3:27, 134-35). Because D.O. Ortega and the

remaining officers had an unconditional right to open Jimenez' cell door, Jimenez'

threats to assault the officers as soon as they opened his cell door—something

Jimenez was aware the officers were certain to do so that they could transfer him

to the violent cell—were not contingent on some future, remote event. Indeed,

Jimenez, by retrieving the shank, holding it at the ready, and threatening to "fuck

someone up" as soon as they opened his door, demonstrated his present ability to

make good on his threats. *See Tanksley v. State*, 656 S.W.2d 194, 196

(Tex.App.–Austin 1983, no pet.)(because jailer had the unconditional right to open

the jail door at the time appellant, who held up a shank fashioned out of a

sharpened toothbrush to the glass window of the his cell door, threatened to stab

the jailer in the eye and pull it out the next time the jailer opened the door*,*

appellant still threatened the jailer with imminent bodily harm and was thus guilty

of aggravated assault, even though the cell door was locked); *Black*, 2006 WL

2507325 at *4 (because appellant did not condition his threat on some future,

remote event, a reasonable inference could be made that appellant would carry out

his threat when he accompanied the victims to their house, and appellant, who

held the knife so that the victims could see it, effectuated a threat of present harm

to the victims). Simply, contrary to Jimenez' contention on appeal that he had no

present ability to carry out his threats (and thus did not possess a "deadly"

-47-

weapon), because Jimenez had no right to prevent D.O. Ortega from opening his cell door by means of his threats—which were made on the condition that D.O. Ortega forego doing precisely what he had a right to do at the very instant of Jimenez' repeated threats—Jimenez' threats did, in fact, pose a *present* threat of physical harm to the officers at all times during his possession of the shank, as well as his flight therefrom. *See Tanksley*, 656 S.W.2d at 196; *Black*, 2006 WL 2507325 at *4.

And, as discussed above, notwithstanding whether the manner of Jimenez' actual use of the weapon was deadly, the manner of Jimenez' express *intended* use—to "fuck someone up" and hurt one of the officers with a shank that the officers knew could be used to seriously hurt or kill someone—certainly was. *See Johnson*, 509 S.W.3d at 323; *Brown*, 716 S.W.2d at 946; *Denham*, 574 S.W.2d at 130. For these reasons, Jimenez' fourth issue should be overruled.

**C.** **Even if the shank was not a deadly weapon in the manner of its use or intended use, it was still a deadly weapon by adaptation.**

As discussed above (and without waiving any of the foregoing), even if the evidence of the manner in which Jimenez used or intended to use the shank was insufficient to establish that the shank was a deadly weapon, because the undisputed evidence established that the shank was adapted for the specific purpose of inflicting serious bodily injury or death, the State was not required to

-48-

prove either that the shank was actually capable of inflicting serious bodily injury or death or that Jimenez had the present ability to carry out his express threats. *See Thomas*, 821 S.W.2d at 620 (explaining that "it is not necessary to verify that the object was really capable of causing death, either in the manner of its actual use or in the manner of its intended use" and holding that the State may prove that an object is a deadly weapon "by adducing sufficient evidence that it was, in fact, 'manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury[.]' If the evidence is adequate for such purpose, then it is sufficient to establish the object as a deadly weapon. No other proof is required.").

The testimony of Sgt. Santana and D.O. Ortega showed that the shank, comprised of a piece of metal fencing, had obviously been sharpened to a point by either Jimenez himself or someone else and that such could be easily accomplished by rubbing and pressing the end of the wire against a variety of hard surfaces accessible to inmates, such as the cement floors and walls in their cells. (RR3:14, 54-55, 75-76, 121). Sgt. Santana and Sgt. Ende noted that the shank had been adapted in a way as to contain a handle on one end, both in the alteration of the edge of the wire itself and by Jimenez' use of a white towel to aid in securing it to his hand for its intended use. (RR3:35, 76, 91). Sgt. Santana's and D.O. Ortega's testimony indicated that the "shank" used by Jimenez—a term reserved

for make-shift items that had been adapted for the "unsafe" purpose of seriously injuring or killing someone—could cause serious injury, even death, if used to stab someone in the neck, eye, head, or anywhere on the body. (RR3:36-37, 42, 120-21, 137-38).

As such, even if the manner of Jimenez' actual use or intended use of the shank was not capable of causing serious bodily injury or death, the State proved that the shank was nonetheless adapted for that very purpose, and thus, because the shank constituted a deadly weapon by adaptation, the State was not required to present any additional proof in support of the deadly-weapon finding. *See Smith v. State*, 51 S.W.3d 806, 809 (Tex.App.–Texarkana 2001, no pet.)(a "shank" comprised of a sharpened piece of metal lodged in the toilet of a cell, which was described by a witness as an instrument used to cause serious death or bodily injury, constituted a deadly weapon by adaptation); *Shugart v. State*, 32 S.W.3d 355, 360 (Tex.App.–Waco 2000, pet. ref'd)(holding that an ice-pick type weapon, sharpened to a point with a cloth wrapped at one end for a handle, described as a "shank," was a deadly weapon by adaptation); *Crittendon v. State*, 923 S.W.2d 632, 635 (Tex.App.–Houston [1st Dist.] 1995, no pet.)(a "shank" found during a search of appellant's cell, which an officer described as a metal rod with a sharpened tip and paper handle and a type of object used to inflict serious bodily

injury or death, was a deadly weapon by adaptation); *Basden v. State*, No. 01-01-00666-CR, 2002 WL 31771167, at *2 (Tex.App.–Houston [1st Dist.] Dec. 12, 2002, pet. ref'd)(not designated for publication)(evidence describing the shank found in appellant's cell as a metal object that was not in its original shape and form, had been adapted to be capable of causing serious bodily injury or death, was immediately recognized to be a deadly weapon in that it had been sharpened to look like a knife, and could be used to stab somebody in the head or neck was legally sufficient to prove the shank was a deadly weapon by adaptation); *see also* TEX. PENAL CODE § 1.07(a)(17)(A); *Thomas*, 821 S.W.2d at 620.

The evidence was thus legally sufficient for the jury to have found that Jimenez used or exhibited a "deadly weapon" during his commission of, or flight from, the underlying offense, and Jimenez has failed to show that the trial court's entry of the affirmative deadly-weapon finding was made in error. For this final reason, Jimenez' fourth issue is without merit and should be overruled.

## PRAYER

WHEREFORE, the State prays that Jimenez' request to have the affirmative deadly-weapon finding deleted from the judgment be denied and that his conviction and sentence be affirmed.

Respectfully submitted,

JAIME ESPARZA
DISTRICT ATTORNEY
34th JUDICIAL DISTRICT

/s/ Raquel López

RAQUEL LOPEZ
ASST. DISTRICT ATTORNEY
DISTRICT ATTORNEY'S OFFICE
201 EL PASO COUNTY COURTHOUSE
500 E. SAN ANTONIO
EL PASO, TEXAS 79901
(915) 546-2059 ext. 4503
FAX (915) 533-5520
raqlopez@epcounty.com
SBN 24092721

ATTORNEYS FOR THE STATE

-52-

## **CERTIFICATE OF COMPLIANCE**

The undersigned does hereby certify that the foregoing document contains 12,330 words.

/s/ Raquel López
RAQUEL LOPEZ


## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on May 25, 2018, a copy of the foregoing State's brief was sent by email via the e-file system to appellant's attorney: Peter R. Escobar, escobaroffice_mail@sbcglobal.net.

/s/ Raquel López
RAQUEL LOPEZ